# Howard v. Howard et al.

(Decided March 27, 1936.)

A. F. BYRD, ALLEN & BYRD, and JOHN H. GARDNER for appellant.

HOWARD & MAYO and J. W. HOWARD and H. H. RAMEY and W. R. PRATER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

In the action of R. C. Poage Milling Company vs. Charley Howard, et al., pending in the Magoffin circuit court, Harris and Celia Howard's answer was made a cross-petition, and the evidence directed to the issues thereon present the questions to be determined on this appeal.

Harris and Celia Howard conveyed to Charley Howard a tract of land situated in Magoffin county, Ky., for the agreed consideration of $7,000; of which $3,500 was cash, and the balance evidenced by three notes; two for $1,000 each and one for $1,500. The two $1,000 notes were paid. The subject of this litigation is the $1,500 note.

Harris Howard assigned and delivered it to P. H. Howard, who later assigned it back to Harris Howard. Charley Howard's defenses are: While P. H. Howard was the owner of it, he sold and conveyed to him a lot at the agreed price of $500, $450 of which was to be credited on the $1,500 note; that the tract of land for which it was executed, was represented, and conveyed

to him as containing 22 acres, when in reality it contained 17.9 acres—a shortage of 4.1 of an acre, or more than 10 per cent. of the acreage.

He charged in his answer that the sale price per acre was $318.18, and the shortage of 4.1 acres at the agreed price per acre amounted to $1,203.90, which, when added to the $450, satisfied in full the $1,500 note. He further charged that prior to the execution and delivery of the deed to him, Harris and Celia Howard had sold the timber on the 22 acres and at the time the latter was deeded to him, he had no knowledge of the previous sale of the timber, and that it was not excepted, but subsequently had been cut and removed from the land by the parties to whom they had sold it, to his damage in the sum of $750. He counterclaimed for the difference between the $450 and the $1,203.90, the purchase price of the shortage, the $750, and the $1,500 note and interest.

On the evidence adduced, the court denied his defenses, dismissed his counterclaim and rendered judgment against him for the note of $1,500 and interest. He is here insisting that its judgment is contrary to, and not sustained by, the evidence.

P. H. Howard admitted that Charley Howard deeded him a lot for the agreed consideration of $500, but claimed that at the time Charley executed and delivered the deed, he held a note against Charley for $350, which, with the interest, amounted to about $450; that it had been executed and delivered by Charley to Harris Howard for hay, sold and delivered by the latter to Charley, and assigned to P. H. Howard by Harris Howard, and that the $450 which Charley now claims, should be credited on the $1,500 note, was satisfied in the deal between him and Charley for the lot.

An analysis of the evidence bearing on this issue satisfies us that the court properly accepted that in behalf of Harris Howard, rather than that in favor of Charley. As to the shortage in the 22 acres conveyed by Harris to Charley, the evidence is conflicting. A surveyor employed by Charley to survey and calculate the shortage in the acreage, if accepted as correct, the court erred against him in this respect. On the other hand, if the survey and calculation of the acreage by the surveyor employed by Harris Howard is accepted

as correct, the court committed no error in finding there was no shortage in the acreage.

Harris Howard owned a large tract of timber land. The boundary thereof was surveyed under an old patent and an old deed, previous to Harris' deed to Charley for the 22 acres. About 1920, Harris Howard sold all the oak timber on the entire tract to Lucas E. Moore Stave Company and executed to it a deed therefor. The Dawkins Log and Mill Company thereafter acquired title and the town of Royalton was built and a railroad constructed which caused the town to develop. The 22 acres deeded to Charley Howard was suitable for building lots, and it was one of these lots he sold to P. H. Howard. Harris Howard testified that at the time he agreed to convey, and conveyed, the 22 acres to Charley, he did so with the distinct agreement between him and Charley that the timber thereon had been previously sold; that the deed was not intended to convey the timber, and that Charley accepted it not expecting to be conveyed thereby the timber. Charley's statements in this respect were equivocal until he was presented with a contract in which he had agreed with D. W. Howard to ''cross-cut and log to the mill and put on the skids at the mill'' for an agreed price, the timber on the original Harris Howard tract, including the 22 acres. Charley's explanation of this contract is, that it was one he had with the Lucas E. Moore Stave Company who later sold out to D. W. Howard, and that he had subsequently sold to D. W. Howard his contract with the Lucas E. Moore Stave Company, who finished the job, Charley going to the state of Ohio. He did not know who had cut the oak timber, standing on the 22 acres at the time Harris and Celia Howard made him a deed to it. It was cut after he made the contract with D. W. Howard. He finally admitted that he knew the oak timber had been sold some time before it was cut and removed under a contract which provided that the cutting of the timber was to be completed before January 1, 1925, which had been extended by the parties. The deed of Harris and Celia Howard to him was dated January 25, 1928.

It is true that the deed of Harris and Celia Howard to Charley did not reserve the standing timber. It is equally as true that before and at the time it was

executed and delivered, they agreed that it was not to include the timber. The evidence bearing on this issue is sufficient to authorize and require a reformation of the deed to the extent that it failed to reserve the standing timber which had been previously sold by Harris Howard. Hence, the evidence authorized the judgment dismissing his counterclaim, in so far as it sought damages for the cutting and moving the timber off the 22 acres after the execution and delivery of his deed. As to the shortage in the 22 acres, the evidence demonstrates that the boundary as described in Charley's deed embraced a little more than 23 acres, and the court properly refused to give him credit on the note for a shortage in the acreage.

Charley's pleading bases his right to recover for the shortage on the premise that the boundary contained more than 10 per cent. shortage at the time the deed was executed and delivered. He makes no claim in his pleading that he had been evicted from any portion of the 22 acres by the owner of a prior and superior title, or that any portion of it was in the open, adverse possession of another at the date of Harris and Celia Howard's deed to him. He introduced evidence tending to show that the boundary of the 22 acres lapped over on the land of Sam Stevens, and that Stevens had been in the open, adverse, and continuous possession of a portion of the 22 acres for more than fifteen years next before the commencement of this action. He argues that he is entitled to recover on his counterclaim for that portion of the 22 acres to which evidence was directed, tending to show Stevens' adverse possession thereof.

A judgment cannot rest on the evidence alone, unless waived by the opposite party. Aside from this, the number of acres in that portion of the 22 acres which the evidence tended to show was in the adverse possession of Stevens was not shown to be 10 per cent. of the 22 acres.

The issues presented and to be determined in this case are controlled solely by the evidence, and an examination of it undoubtedly establishes the correctness of the trial court's judgment.

Wherefore, it is affirmed.