PITTMAN v. UNION PLANTERS NAT.
BANK & TRUST CO. et al.

In re NATIONAL COTTONSEED PROD-
UCTS CORPORATION.

No. 8406.

Circuit Court of Appeals, Sixth Circuit.

March 4, 1941.

Lowell Taylor and Larry Creson, both of Memphis, Tenn., for appellant.

J. W. Canada and E. P. Russell, both of Memphis, Tenn., and F. A. Berry, of Nashville, Tenn. (Canada & Russell, of Memphis, Tenn., and Bass, Berry & Sims, of Nashville, Tenn., on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

In a bankruptcy proceeding begun by petition for reorganization under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, but proceeding subsequently to liquidation of assets upon an adjudication of insolvency, the District Court entered a decree, challenged by this appeal, which adjudicated as valid certain claims of the Chemical Bank & Trust Company, the Union Planters National Bank & Trust Company, and the American National Bank of Nashville, to priority in funds from the sale of cottonseed and cottonseed products represented by warehouse receipts held by the claimants as security for loans. The decree also denied recovery by the trustee of various payments and transfers to the banks claimed to have been preferential.

The bankrupt, a Delaware Corporation, was organized in 1925 to take over a number of existing cottonseed mills. It issued common and preferred stock and bonds upon its physical properties. The appellees were not concerned with its organization. In 1933 and 1934, to secure working capital, it obtained a large loan from the Reconstruction Finance Corporation, pledging all of its warehoused cottonseed as security, and subsequently pledged its equity therein to the Union Planters Bank & Trust Company of Memphis, and the American National Bank of Nashville, for additional loans. During 1934, still more money, as well as a modification in method of handling and releasing warehouse receipts to obviate delays in the delivery of seed to the mills, was requested of the R. F. C., but was not obtained. A loan was thereupon secured on· December 28, 1934, from the Chemical Bank & Trust Company, from the proceeds of which the R. F. C. loan was paid in full and the Chemical Bank assumed the R. F. C. position as holder of the collateral.

The method of warehousing pursued by the bankrupt is known as the field warehousing system. In order to avail itself of inventory for credit purposes, the bankrupt entered into an agreement with the Nashville Warehouse & Elevator Corporation for the warehousing of its cottonseed. No convenient storage facilities being available, the bankrupt leased to the Warehousing Company its own storage facilities at points in Arkansas, Illinois, and Tennessee, with an agreement by the Warehousing Company that it would furnish the necessary employees for safe warehousing, and issue warehouse receipts for goods stored with it, for a consideration over and above necessary expenses, and a guarantee by the bankrupt against loss or damage in connection with such storage not due to its own fault. The Warehousing Company appointed one of the bankrupt's employees at each mill as custodian and required of him a fidelity bond, and a daily written report of quantities of cottonseed and products received, disposed of, and remaining on hand. The head warehouseman was stationed in the bankrupt's main office where he compiled and kept a master record of quantities on hand and withdrawn upon warehouse receipts made up from the daily reports furnished him·by the mill warehousemen. The system followed when the R. F. C. held the

collateral was continued after the banks took over the loans.

The appellant concedes that field warehousing may validly be carried on, and that the issue of warehouse receipts will afford valid security to the holders when the warehouseman takes and maintains sole, open and actual possession of the stored property. He contends that this was not true of the present system and assails the warehousing as merely colorable. While the receipts may have been in proper form, he points to numerous circumstances invalidating the security. The warehouse facilities, he says, were upon the properties of the bankrupt to which it had access; the warehousemen were its employees, devoting but a minimum of time to the warehouse business; it paid their wages and paid no rent to the Warehousing Company; until receipts were issued it exercised the right to crush and use the seed inventory, unaffected by the warehouse agreement; there was no actual change of possession of stored property since it was never handled by the Warehousing Company, nor segregated from the bulk, and was withdrawn for crushing purposes by mechanical conveyors operated by the bankrupt; the cottonseed houses were never locked and the bankrupt's operations were not interfered with by the warehousemen.

The master found, however, in findings sustained by the court, that the seed was delivered to the Warehousing Company; that adequate signs were placed upon the buildings; that local warehousemen were in charge at each mill, rendering daily reports to the central control warehouseman in charge at Memphis, who kept an adequate control record of the property on hand; and concluded upon the whole record that the Warehousing Company was in actual, open and exclusive possession of the cottonseed. There was no evidence of an inactive or perfunctory performance of the duties of the warehouseman or his aides, and the bankrupt at all times recognized his authority. There was never any actual shortage between cottonseed on hand and receipts outstanding. The apparent shortage that seemed to have been indicated by the reports was fully explained to the satisfaction of both court and master as having been due to a delay in mail delivery of warehouse receipts from the mills to the main warehouse office in Memphis. When shortage did appear, the warehouseman, at least on one occasion, required the closing of the mills until the receipts were received and cancelled.

Upon these concurrent findings of court and master, it is our conclusion, in the absence of clear demonstration of error, that the warehouse receipts were valid and afforded security both to the Reconstruction Finance Corporation and to the banks. Union Trust Co. v. Wilson, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154. The law of Tennessee does not require a contrary view. Bank of Rome v. Haselton, 15 Lea 216, 83 Tenn. 216. The Tennessee cases cited as authority for the doctrine that there may be no lien on personal property consumed by use or exhausted by sale, are not applicable, since there was no withdrawal here, except upon surrender and cancellation of receipts. Nor are decisions apposite dealing with warehouse receipts on goods which are not fungible, such as Interstate Banking & Trust Co. v. Brown, 6 Cir., 235 F. 32. While the Uniform Warehouse Receipts Act provides that the receipt shall state the location of the warehouse in which the goods are stored (Williams Tennessee Code, § 7533 (a), such alteration as is here complained of is permitted (Tennessee Code, 1932, § 7544), when, as found by the master, the holder has agreed to accept delivery at other points.

As pointed out in Union Trust Co. v. Wilson, supra, the form adopted might be emptied of significance by a different understanding between the parties which the form was intended to disguise. This record is barren, however, of any such different understanding, and the charges of collusion, fraud and bad faith, though made with great insistence by the trustee, wholly fail of support, and the master so found. It is a truism, requiring no supporting citations, that fraud may not be assumed and must be established by clear and convincing evidence. No motive for the alleged fraud is suggested with respect to the R. F. C., and likewise may none be imputed to the Chemical Bank which took over the security and stepped into the picture but a short time before the filing of the petition. No sinister implication is to be derived from the fact that the Chemical Bank took demand notes instead of notes with stated maturities, such as were held by the R. F. C. Demand notes are commonly used evidences of indebtedness, and may well be considered as reducing the hazard of a loan in times of unsettled

214

business conditions. The adjudication by the decree that the appellees are entitled to priority in the avails of cottonseed covered by their warehouse receipts, must be sustained.

■ At the time the petition was filed the appellees held warehouse and trust receipts for cottonseed products, but the master found that the warehousemen did not have actual, open and exclusive possession of them; that there was a failure to post appropriate signs, indicating ownership or lien otherwise than in the bankrupt, or to segregate them from its other property. These findings are confirmed by the court, and it is clear that the warehousing system, as operated, was inadequate to give validity to the receipts. Security Warehousing Co. v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789; Williams v. First Nat. Bank, 150 Tenn. 15, 261 S.W. 973.

The court, however, permitted recovery upon the products receipts claim under principles governing equitable liens. This was on the ground that the products were created with money belonging to the banks and advanced to the bankrupt from time to time, during the four months period prior to the filing of the petition, when the bankrupt was itself without current funds out of which it could have created the products. Undoubtedly there was an effort to pledge this property to the banks, but the pledge was not perfected either by possession, notice, or segregation of the property as the property or security of the pledgees. Britton v. Union Investment Co., 8 Cir., 262 F. 111; Johnson v. Burke Manor Building Corp., 7 Cir., 48 F.2d 1031, 83 A.L.R. 1273; Foster & Mfgs. Finance Co., 1 Cir., 22 F.2d 609. Compare Voltz v. Treadway & Marlatt, 6 Cir., 59 F.2d 643. There is nothing in the present situation that distinguishes it from that adjudicated by us in Marshall v. Roettinger, 6 Cir., 294 F. 158. Here, as there, the purchaser's remittance went into the funds of the bankrupt, and there was commingling both of the property and its avails. The decree must be amended, eliminating therefrom the adjudication that the appellees are entitled to recover upon warehouse receipts or trust receipts, for cottenseed products.

■ ■ The trustee filed exceptions to the claims of the appellee banks on the ground that preferential payments and transfers had been made to them within four months preceding the filing of the petition, and that the claims should be disallowed unless the preferences are surrendered in accordance with the provisions of § 60, of the Bankruptcy Act, 11 U.S. C.A. § 96. These exceptions present two issues of fact, the first relating to the solvency of the bankrupt, and the second to whether the banks had reasonable cause to believe that the payments and transfers would effect preferences. The master found the corporation to have been insolvent, but the court reversed. It would transcend the appropriate limits of an opinion, and serve no useful purpose, to analyze the great volume of testimony taken on this issue, or to discuss with any effort at particularization, the able and exhaustive report of the master upon evidentiary facts, ultimate facts, and the legal conclusions leading to his determinations. Having in mind that the burden is on the trustee to show that the bankrupt made the alleged preferential transfers while insolvent, we agree with the court below that the burden was not sustained.

It is true that the bankrupt was in difficulties because of a shortage of adequate working capital during the several crushing seasons preceding the filing of the petition. It is also true, however, that the audits of its books, made by reputable accounting firms and based upon appraisals made by appraisal companies of high standing, at its own instance, that of the R. F. C. and the banks, reflected a net worth as late as June 19, 1934, of more than $2,-000,000; that its plants and equipment had been kept in good repair with adequate charge-offs for depreciation; that until default in January, 1935, but a few days before the filing of the petition, its interest on bonded indebtedness had been kept up and that it had paid off its current operating indebtedness to the banks and the R. F. C. following the close of its 33–4 season. Its officers were at all times convinced of its solvency, and while such evidence is neither conclusive nor entitled to great weight, the good faith of their currently expressed judgment is not impeached. The R. F. C. loaned the bankrupt approximately 2¼ million dollars in 1933 and 1934 upon careful examination of its financial status and repeated determinations of its solvency. The Chemical National Bank assumed the R. F. C. position on December 28, 1934, after careful examination. When the petition for reorganization was filed on January 23, 1935, there was no

thought of liquidation, and its purpose was revision of debt maturities and provision for adequate working capital so as to effectuate more successful operation. It was not until April 11, 1935, that the debtor was adjudicated a bankrupt. In the meanwhile its operations had ceased, trustees had made vigorous attacks upon its whole system of warehousing and operation, and market conditions had turned unfavorably.

The master was guided to his conclusion largely by the realization of the properties in liquidation, and by an appraisal made for the court after the filing of the petition. It seems clear, however, that when the sales of property were made in the reorganization proceeding, the debtor was no longer a going concern, and going concern value of its properties could not be realized, In re Nathanson Bros. Co., 6 Cir., 64 F.2d 912; In re Klein, 6 Cir., 197 F. 241, and the record warrants the inference that the appraisal made for the court was, to large extent, if not altogether, perfunctory. We accept the adjudication in the decree that the bankrupt was solvent at the time of its alleged preferential payments and transfers to the appellees.

█ █ But if we are wrong in this, it seems clear that there was nothing, during the four months period prior to the filing of the petition, to bring home to the appellee banks either actual or constructive knowledge of insolvency so as to support a finding that they had reasonable cause to believe that transfers to them of money or property would effect a preference. The master based his finding in this respect upon the fact that Alexander, President of the Union Planters Bank, was, in 1933 and down to August, 1934, on the Executive Committee of the bankrupt company, and charges the Chemical Bank with constructive knowledge of its affairs because Union Planters was its agent in collecting the money due it. The conclusion does not follow. Alexander severed his relationship with the bankrupt in August, 1934, and had no connection with it during the period in question, and such knowledge as he may have had of its status is not to be imputed to the Chemical Bank. It seems inconceivable, in the absence of any showing of fraud, collusion, or bad faith on the part of the latter, and without more than is here noted, that payments and transfers made to it in due course in January, 1935, would lead to a

reasonable belief that they would effect preferences in payment of a loan consummated after careful examination and audit on the 28th of December, 1934.

█ In a consideration of the present record, we have given no weight to passing comment on the financial condition of the bankrupt by other District Judges who, from time to time, supervised the steps in the reorganization proceedings. Such observations were in no sense adjudications, were not made upon consideration of evidence, nor in respect either to the time or the issues here involved. The petition to add their cursory references to the record is, therefore, overruled. Nor have we given consideration to questions raised upon exceptions to the master's report not urged on appeal. We assume that they have been abandoned.

The cause is remanded to the court below with instructions to amend the decree in conformity with this opinion, and as so amended the decree will be affirmed.