## Hall et al. v. Gayheart

January 19, 1951.

W. R. Prater, Judge.

H. B. Noble for appellants.

Clark Pratt for appellee.

JUDGE SIMS—Affirming.

This action was instituted by appellee, John Gayheart, against William Hall and wife, Maggie, to quiet his title to a lot in Knott County against the claim of appellants. The answer denied appellee's title and by way of counterclaim appellants ask that their title be quieted against the claim of appellee. Something over 200 pages of proof were taken by depositions and the chancellor decided the title to the lot in controversy was in appellee and this appeal followed.

Bryan Slone owned a narrow strip of bottom land situated between highway No. 80 and Troublesome Creek in Knott County about a quarter of a mile from Hindman. On July 28, 1941, he conveyed to his son, Willie, from this land a lot beginning at a culvert on the highway; thence running 45 feet to a post; thence across the bottom to a marked willow tree; thence up the creek 45 feet; thence to the culvert, the place of beginning. This deed was duly recorded on Aug. 7, 1941. Then, on Feb. 16, 1944, Bryan Slone deeded to Willie a second lot with this description "Beginning on Sycamore tree on line of Frank Calhoun; thence with the state highway 100 feet more or less to a locust post; thence straight across the bottom to Troublesome Creek; thence up Troublesome Creek to the beginning, containing 1½ acres more or less."

The description in this second deed included the lot first conveyed Willie by his father, but it does not appear from the record this second deed was recorded.

There remained another lot of the original tract and on Feb. 5, 1946, Bryan Slone conveyed it to appellants using this description in the deed: "Beginning on a locust post at Willie Slone line at State Highway; thence down State Highway down Troublesome Creek to mouth of culvert in front of Bonnie Gibsons lot; thence to Troublesome Creek; thence up Troublesome Creek to line of Willie Slone; thence with Willie Slone's line

across the bottom to the beginning, containing 1 acre more or less.''

On April 10, 1947, Willie Slone sold to Kendall Conley and wife a portion of the lot his father had conveyed to him and used this description in the deed to the Conleys: ''Beginning at mouth of Culvert on State Highway; thence down the creek to Bill Hall line; thence with Bill Halls line back to the Highway to set post; thence up the highway to the beginning, containing ¼ acre, more or less.''

The Conleys required Bryan and his wife to join Willie and the latter's spouse as grantors in this deed, the reason not being clear but probably it was because the second déed that Bryan had made to his son was not of record.

On Nov. 8, 1947, the Conleys conveyed to John Gayheart the same property the Slones had conveyed them, the description in the two deeds being identical.

Subsequently, some controversy arose between Gayheart and Hall as to the boundary line between their properties, and the day after the former started the construction of a house on his lot, he instituted this action against the latter to quiet title.

On the morning of the day Bryan Slone conveyed the lot to Hall the two men went on the premises and set a post next to the highway and another next to the creek in the line of the property Bryan Slone had conveyed his son Willie, and Bryan told Hall he would deed him the lot up to these posts for $700. Hall replied, ''It looks to me like too much money for that small amount but * * * we can go down town to the clerk's office after twelve and look at the record and we might trade.'' The parties and their wives did go to the office of the county court clerk and that official wrote the deed. The clerk testified he found only one deed of record from Bryan to Willie, which conveyed the latter a lot fronting 45 feet on the highway. The clerk could not remember the discussion between the parties in his office but recalls there was something said about the line, also a post was mentioned. Hall and his wife both testified that when the clerk read the deed conveying Willie the 45 foot lot, Hall said to Bryan, ''You make me a deed to Willie Slone's line and I have every dollar of your money'';

that Bryan agreed, the clerk wrote the deed and Hall paid the $700 purchase price.

Bryan Slone, Frank Calhoun and Willie Slone all testified that on the day Hall bought the property Hall helped. Bryan carry and set the posts; that Hall and Bryan established the line between the Willie Slone property and the lot bought by Hall as running between the two posts they set that morning. Soon after the deed was made to Hall, Calhoun under employment by Conley erected a three-strand barbed wire fence on the line established between the two posts. Although appellants then lived in sight of the fence, they made no objection thereto, except they did not like the fence being made with barbed wire. There is other evidence that Conley and Hall each used and cultivated their respective lots up to this division fence.

The chancellor adjudged that the line between the parties was the one they established between the two posts set in Willie's boundary the day the deed was made. We agree with him that appellee made good his plea of estoppel by showing Hall helped to set the posts and in establishing the line and by not objecting to the fence being built on that line. This conduct estopped appellants from claiming their lot extended to the 45 foot lot Bryan conveyed Willie.

Equitable estoppel applies to a situation where it would be unconscionable to permit one to maintain a position inconsistent with one in which he has acquiesced to the detriment of another who has changed his position. Hicks v. Combs, 311 Ky. 149, 223 S. W. 2d 379, 11 A. L. R. 2d 1393. But we do not agree with the chancellor that appellants stood by and watched appellee build his house on part of the land in dispute and for that reason are estopped. The record shows this litigation was instituted the day after appellee started building and there was nothing in appellants' action on this score to estop them.

This is purely a fact case and the evidence, although highly conflicting, is abundant to sustain the finding of the chancellor. The well-settled rule is that this court will not disturb the chancellor's finding of fact on conflicting evidence where there is no more than a doubt left in our minds as to its correctness. The cases are numer-

ous in support of this rule and instead of citing any specific ones, we refer the reader to Volume 2 of the Kentucky Digest "Appeal and Error," Key 1009(3).

The judgment is affirmed.