## WILLIAMSON v. ROMANS.

Court of Appeals of Kentucky.
Jan. 16, 1953.

As Modified on Denial of Rehearing
June 19, 1953.

P. B. Stratton, Pikeville, for appellant.

Hobson & Scott, Pikeville, for appellee.

STEWART, Justice.

This suit was brought by plaintiff, Octavia Williamson, to enjoin trespass and to seek a judicial settlement as to a disputed boundary line between the land of plaintiff and that of defendant, Carrie Romans.

Plaintiff appeals from that part of the judgment establishing the division line across the north end of her farm, while defendant cross-appeals from that part of the judgment allowing plaintiff 25 acres of land lying on the Spring Branch side of a ridge which defendant asserts is a natural boundary between the two tracts.

Appellant's land lies in the region of Long Branch on Big Creek in Pike County. Appellee's land is located to the west of appellant's tract in the general vicinity of what is known as Spring Branch in the same county. Appellee traces her title through her father, Marion Stepp, back to her grandfather, John Stepp, who conveyed this property to his son, Marion, by deed on January 26, 1883.

Appellant's paper title goes back to Ben Williamson, Sr., who obtained a patent of 175 acres from the Commonwealth of Kentucky on January 4, 1855. The patent included 148 acres which was excluded because of a prior patent. By a will probated in 1879 Ben Williamson, Sr., devised the land in fee to the children of his grandson, Benjamin F. Williamson. This land was partitioned among the heirs of the latter, one of these being Clint Williamson, who was given the lower end, the boundary of which is now in dispute. Octavia Williamson, wife of Clint, obtained the land by deed from her husband in 1906. Appellant also claims the acreage in dispute by adverse possession.

The parties disagreed sharply at the outset as to the location of the beginning corner called for in the Ben Williamson patent, a survey of which was made on February 15, 1853, and entered of record. The description of the patent calls for the beginning to commence at two birches on the top of the point of the ridge that separates Long Branch from the headwaters of Spring Branch. Appellant maintains this point is located at a white oak and beech designated as "Station 1-A" on the map made by her surveyor, Alonzo Ford, and introduced as evidence herein. Appellee claims the point is at the site of two birches, just to the south of Station 1-A, which her surveyor, J. Harvey Williams, fixed in his testimony as the commencement corner of the Williamson tract. The Chancellor accepted neither of these views.

The location of the lower or northern corner of the second call of the Williamson tract, designated as "Station 2" on the

Williams map, was also in dispute, appellant claiming this corner to be at a 43-inch white oak and appellee asserting it to be at a 24-inch white oak, a short distance to the east. The Chancellor accepted appellant's contention here and then ran a straight line back southwestwardly through a sycamore tree stump described in the evidence as in the line of this call and established the beginning corner of the Williamson tract at a place approximately 115 feet south of the point contended for by appellant. Appellee has adopted the finding of the Chancellor on this score and her counsel urges that the beginning corner fixed by the Chancellor should be upheld.

In attempting to sustain her position as to the location of her northern division line between the two tracts, appellant relies chiefly upon evidence concerning a fence which she affirms was accepted without question as a line fence for some 50 years or more until this litigation. The fence is 30 feet west of the line determined upon by the Chancellor. This evidence tended to establish not only that this fence was agreed to as a division marker by all the former owners of both tracts but also that the predecessors in title of both appellant and appellee had cultivated the land down to this fence on both sides, every one thereby recognizing the fence as separating the tracts of appellant and appellee since it had been first placed there.

On the other hand, appellee introduced testimony amounting to a denial that the fence was ever acknowledged by any one who formerly owned her land as demarking the boundary between her farm and appellant's. There was evidence introduced to the effect that the fence was of fairly recent origin and was placed some feet inside of appellee's land so that a lane for ingress and egress over this land into her farm would be outside the fence. The Chancellor accepted this theory, and not without some basis for so doing.

Although none of the title papers mentions a sycamore tree or stump, a host of appellant's witnesses adduced testimony to the effect that a sycamore tree, at the above indicated location, had long been considered as lying on the line between the two tracts. Witnesses taken to the spot pointed out an old sycamore stump, the remains of a large sycamore tree, which they stated had long been accepted as a line tree.

This is purely a fact case and the evidence, although highly conflicting, is abundant to sustain the finding of the Chancellor. The well-settled rule is that this Court will not disturb the Chancellor's finding of fact on conflicting evidence where, as here, there is no more than a doubt left in our minds as to its correctness. Hall v. Gayheart, 314 Ky. 432, 235 S.W.2d 1020.

We come now to the question raised by the cross-appeal, that is, whether the Chancellor correctly adjudicated appellant to be the owner of the 25 acres in controversy, located on Spring Branch.

A detailed examination of the record discloses that the pleadings did not raise an issue as to who was entitled to the ownership of the 25-acre strip, and we might add that there is no proof to sustain that portion of the judgment which decreed appellant to be the owner of this acreage of ground. It appears that when the Chancellor handed down the judgment he deviated from the only question presented to him for consideration relative to the boundary controversy between the parties, which was the location of the appellant's north division line between the land of appellant and that of appellee. Manifestly, the Chancellor committed a reversible error in adjudicating an issue that had no basis in the pleadings and the evidence. The rule that the judgment must conform to the pleadings and the evidence is succinctly stated in 41 Am.Jur., Pleading, § 381, p. 555, in this language: "Decrees in equity and judgments at law must have a basis in the pleadings and the evidence. A party's proof cannot materially vary from his allegations, and the verdict and judgment must respond to the issues as raised by the pleadings. The parties should be confined in their recovery to that to which they are entitled within their allegations. It is not upon the

evidence alone, but upon the pleadings and the evidence applicable to the pleadings, that the plaintiff can in any case recover."

We deem it unnecessary to discuss the question of adverse possession alleged by appellant in her petition to uphold her claim of title to any of the land in controversy for the simple reason that this plea is wholly unsupported by any evidence.

Wherefore, the judgment is affirmed on the appeal and reversed on the cross-appeal for further proceedings not inconsistent with this opinion.