Ada ROSE, Executrix of the Estate of G. B.
Rose, Deceased, Appellant,

v.

George GRIFFITH, Appellee.

Court of Appeals of Kentucky.

June 24, 1960.

16

Moss Noble, Jackson, for Appellant.

O. J. Cockrell, Grannis Bach, Jackson, for appellee.

MOREMEN, Judge.

G. B. Rose, who has since died, filed suit to quiet title to 56 acres of land in Breathitt County. Its boundary was specifically described. He alleged that the defendant, George Griffith, was wrongfully claiming part of his land and had cut timber on and hauled it over his property. Griffith, by answer and counterclaim, denied all allegations of the petition and further stated that he was unable to determine from plaintiff's petition what land he was claiming, but was informed that Rose was laying claim to a tract known as the W. M. Griffith farm which defendant, with others

—who are made parties—owned. Defendant then particularly described the boundary of the W. M. Griffith farm and pled that he and his co-owners had held the land described by adverse possession.

Plaintiff Rose attempted to prove title to the land by two means. He produced a deed executed by the master commissioner of the Wolfe Circuit Court made the 5th day of October, 1945, on behalf of other heirs of L. G. and Nancie Rose which resulted from a partition suit by the various heirs of L. G. and Nancie Rose. This deed conveyed two tracts of land, one of which apparently contained 18 acres, excluding 2 acres which had been allotted to Robert Rose. Robert Rose and his wife, by a later conveyance, deeded a 2 acre tract to plaintiff. The description of the other tract did not estimate the area conveyed.

In a further attempt to show title, Rose filed with his deposition a deed from William Cockrell to Samuel Rose dated January 21, 1830, which purported to embrace 1,000 acres more or less. Plaintiff testified that it embraced the land being claimed by defendant, but plaintiff failed to show any title derived by him from that deed. He merely stated that it conveyed all the boundary which he claimed. We find nothing in the record by which plaintiff attempted to trace his title back to the Commonwealth by deeds, patents or other muniments of title, or to a common grantor through which both he and the defendants might be claiming derivative title.

There is no contention, however, that there was ever a common grantor or common source of title because defendants do not claim paper title to the property. Their alleged right to the land is based entirely upon an entry on the disputed tract made in 1900 by their father. The evidence shows that the father continued to live on the land for about thirty years. Defendant Griffith, who was fifty-two years of age at the time he testified in this case, stated that he was born on the land and continuously lived thereon and exerted

ownership after the death of his father up to the present time. There is ample evidence to support the fact that defendants had claimed this woodland to a well-marked boundary since the time of the entry, and it is also supported by several witnesses who were familiar with the land and the markings on the various trees, and was strengthened by two competent surveyors who had made the survey of the land set forth in the answer and counterclaim. It appears that this boundary was well marked on two different occasions, the last one being about thirty years ago when certain oil companies had been interested in leasing it.

Mr. Rose testified that he had no knowledge that the father or the son had claimed this land until shortly before the suit was filed, but it seems to us the evidence of adverse possession to the well-marked boundary during the lifetime of the defendant and his father amply supports the chancellor's finding.

Plaintiff Rose introduced an experienced surveyor who testified that the calls and measurements contained in the description in the defendants' answer and counterclaim overlapped those in the description of the land claimed by plaintiff Rose. Defendants, in turn, introduced engineers who testified that they had run the line by following the distinctly marked trees and had no difficulty in locating the line claimed by defendants.

The court adjudged that defendants were the owners and actual possessors of the title to the land and entered judgment accordingly.

We think this case demonstrates the logic behind the rule that a plaintiff in an action to quiet title must recover on the strength of his own title, and not on the weakness of his adversary. Gabbard v. Lunsford, 308 Ky. 836, 215 S.W.2d 985. In Ratcliff v. Coleman, 241 Ky. 791, 45 S.W.2d 493, 494, it was said:

"It is a rule universally recognized that, in an action to recover land, the plaintiff must recover by reason of the strength of his own title, and not by virtue of the weakness of the title of his adversary. He may do this in one of two ways: First, by showing paper title from the commonwealth; second, by showing that he and those under whom he claims have been in the open, uninterrupted, actual, continuous, and adverse peaceable possession of the property in controversy for a period of fifteen years or more. Noe v. Russell et al., 213 Ky. 746, 281 S.W. 1033."

In the instant case plaintiff did not claim that he held title to this land by adverse possession. He relied on paper title and failed to establish properly a chain of title from the Commonwealth.

Even if the description of the land in plaintiff's petition may be reconciled properly with the description in the deeds which plaintiff filed as exhibits—and we are not convinced that it could be—still the fact that plaintiff has produced a number of deeds and has not traced the source of his title to the Commonwealth renders them of little, if any, value. We think the chancellor was correct in dismissing the petition.

The further contention is made in this case that the pleadings do not support the judgment entered on the counterclaim. In the original answer and counterclaim defendant particularly described the boundaries of the W. M. Griffith farm by metes and bounds and attempted to show legal title to it by deed. Later by amended answer and counterclaim he stated he was the owner of the land set out and described in the petition herein and claimed by the plaintiff in the action, and then set out in some detail the basis for his claim to title under the theory of adverse possession. The second paragraph of the answer withdrew so much of the original answer and counterclaim as was in conflict with the amended answer, and prayed, as in his original answer and counterclaim, that

plaintiff's petition be dismissed. It was adjudged that the title to specifically described land was in the defendant Griffith and that he was the owner and had fee simple title to it. The description in the judgment followed the description which surveyor E. S. Williams stated to be the boundary of plaintiff's land. We are not at all convinced that this description details the limits of defendants' holding. In any event, a judgment must conform to the pleading and we find nothing in the pleading which will support the judgment entered in this case. See Belcher v. Hunt, Ky., 248 S.W.2d 717.

The judgment is therefore reversed with directions to enter a judgment simply dismissing the petition.

Affirming in part, reversing in part.