Vernon **LOFTON** et al., Appellants,

v.

Pete **MOONEY** et al., Appellees.

Court of Appeals of Kentucky.

Jan. 30, 1970.

Rehearing Denied May 8, 1970.

Warren B. Miller, Dixon, for appellants Vernon Lofton, etc., and Farmers Bank.

J. D. Ruark, Morganfield, for appellant St. Louis Terminal Field Warehouse Co.

Joel C. Rich, Dixon, J. Quentin Wesley, Morganfield, for appellees Pete Mooney, and others.

George B. Simpson, Sturgis, for appellee William Waddlington, and others.

CLAY, Commissioner.

Plaintiff appellees are farmers who delivered grain to appellant defendant Lofton,

the owner of a feed and grain mill business at Clay, Kentucky. Some was sold to Lofton and some was placed in storage. In February 1967, plaintiffs brought this suit to recover from Lofton money allegedly owed and due for these deliveries, and an attachment was levied on certain grain which had been stored by Lofton but was then under the control of appellant defendant St. Louis Terminal Field Warehouse Company (hereinafter St. Louis). The affidavit for attachment recited that the plaintiffs' claims were "for the recovery of money due upon a contract". The grain subject to attachment consisted of several thousand bushels of shelled yellow corn. A receiver was appointed and the corn was sold for approximately $24,000. The claims are against this fund and the parties' rights are determinable by their interests in the corn sold.

Prior to the filing of this suit, and of course prior to the date of the attachment, Lofton had entered into a financing arrangement with St. Louis and defendant appellant Farmers Bank (hereinafter Bank). Under this arrangement Lofton leased his storage facilities to St. Louis, thereby vesting in St. Louis dominion and control of the stored grain. St. Louis, a bonded warehouseman, then issued to the Bank a nonnegotiable warehouse receipt which provided the corn was to be held for the account of and delivered upon the instructions of the Bank. This warehouse receipt was accepted by the Bank as security for a $60,000 loan to Lofton. The basic question in this case ultimately became whether the interest acquired by the Bank under the warehouse receipt took preference over plaintiffs' lien acquired by the attachment.

As the Chancellor observed in an understatement, the pleadings in this case are "rather confusing". However, after submission of the case and at the time the Chancellor delivered an opinion, plaintiffs' amended complaint and the answer of St. Louis had placed in the record as an obstacle to plaintiffs' recovery the outstanding interest of the Bank evidenced by the warehouse receipt. As of that time the Bank had not by any pleading asserted any interest in the fund here in controversy. Though the opinion accurately recites that the only relief sought by the Bank was dismissal of the plaintiffs' complaint (plaintiffs having sought to recover sums earlier paid to the Bank from the proceeds of sales of some of the stored corn), the Chancellor concluded the plaintiffs' claims were superior to any interest created by the issuance of the warehouse receipt. After the delivery of this opinion, the Bank filed an "Amended Answer" which was actually a counterclaim. Therein the Bank asserted a superior claim to the fund by virtue of its warehouse receipt and demanded that the fund be declared its property.

Subsequently a money judgment was entered for the plaintiffs against Lofton (which is not questioned). The claim *against* the Bank was dismissed and the plaintiffs were adjudged a lien for their respective claims against the fund. The court did not specifically adjudicate the claim of the Bank against the fund which it had set up in its very late "Amended Answer", but in view of the Chancellor's opinion, the judgment may be construed as denying this claim and both parties in their briefs treat this as the only issue on appeal.

The Bank contends the warehouse receipt created a legal interest in the stored corn, which was prior and superior to the statutory lien acquired by plaintiffs under their attachment. Plaintiffs contend the Bank only succeeded to the rights of Lofton, which could not prevail against them.

Before considering the provisions of the commercial code upon which the parties rely, we examine the nature of the transaction resulting in the issuance of the warehouse receipt. It is known as "field warehousing". It was simply a financing arrangement which would enable Lofton to obtain a bank loan by creating security therefor in the form of an interest in stored fungible goods. A pledge of the stored grain by Lofton would have been rather

shaky security since he had complete control of the commodity. By his transferring the dominion and control of this grain by lease to St. Louis, a bonded warehouseman, St. Louis would assume responsibility for delivery under a warehouse receipt issued by it.

■■ St. Louis acquired no interest in the grain (except a lien for storage charges), but it was placed in the channels of commerce for disposition by St. Louis. Had St. Louis not issued a warehouse receipt covering the 60,000 bushels of stored yellow corn, plaintiffs' attachment probably would have reached the grain in the hands of St. Louis. However, the warehouse receipt was a document of title vesting a valid security interest in the Bank. We may observe, as far as this record shows, there is no question of fraud or bad faith. The Bank, in effect, being the person designated by this warehouse receipt as the one to whom delivery was to be made, stands in the shoes of a good faith purchaser for value.

The warehouse receipt was a "document of title". KRS 355.1-201. By its terms the Bank was entitled to delivery on demand. KRS 355.7-403. The Bank relies on KRS 355.7-503, which by implication provides that the holder of a document of title has a superior right in goods against a person who had a *prior* legal interest or a perfected security interest if the person with such prior interest has delivered the goods to one "with actual or apparent authority to ship, store or sell" the goods. We do not think this section applicable, because the plaintiffs have not asserted that they had any *prior* legal or perfected security interest in this yellow corn. Even assuming such prior interest did exist, the plaintiffs would have relinquished that interest by the delivery of the grain to Lofton, who was in the feed and grain business and had the apparent, if not actual, authority to sell it.

■ Plaintiffs rely on KRS 355.7-504 (1), which provides in substance that the "transferee" of a nonnegotiable document to whom the document has been delivered "but not duly negotiated" acquires only the title and rights which its transferor had.[1] Although the Bank contends this document was "duly negotiated" to it, we think both parties have overlooked the fact that this statute has no application. It applies to a "transferee" of a *document*. The Bank was not the transferee of the warehouse receipt. It was the original holder of the document issued to it.

■ Even if that statute applied, the Bank acquired whatever rights St. Louis had. No one questions the right of St. Louis to contract to deliver this grain it held in storage. Plaintiffs argue that St. Louis did not own the grain, which is true. However, under its contract with Lofton and as a bonded warehouseman, St. Louis had authority to vest the incidents of ownership in another by the issuance of a warehouse receipt. This pledge is effective against attaching creditors of the lessor. See 56 Am.Jur., Warehouses, section 85 (page 361); Heffron v. Bank of America National Trust & Savings Association, 9 Cir., 113 F.2d 239 (1940); and Pittman v. Union Planters Nat. Bank & Trust Co., 6 Cir., 118 F.2d 211 (1941).

■ As we have before pointed out, plaintiffs' only claim to the fund in controversy is based upon a statutory lien created by virtue of an attachment. That lien was obtained long after the Bank had acquired a legal security interest in this stored grain by the issuance to it of a valid warehouse receipt. It is our view the Bank's rights were superior to those of the plaintiffs.

We are now confronted with the question of the extent of the Bank's rights as opposed to those of the plaintiffs. As before mentioned, the warehouse receipt was

---

1. It is difficult to understand how a *nonnegotiable* document may be "duly negotiated" in the light of KRS 355.7-501.

issued to it as security for a $60,000 loan to Lofton. By virtue of an accounting filed by the Bank (upon motion of the plaintiffs) long before the entry of judgment, it appears that the principal of Lofton's debt had been reduced to something over $38,000.

The fund in controversy is approximately $24,000. As of the time the Bank first asserted by pleading its right to this fund (by its late "Amended Answer"), there was nothing in the record, nor was anything thereafter pleaded or proven, to indicate the amount due on the note or the indebtedness of Lofton to the Bank. As far as we know, although it is extremely unlikely, the entire indebtedness could have been liquidated, and if so, the plaintiffs would have a superior claim to the fund. For this reason we deem it necessary to remand this case for a determination of the extent of the Bank's interest in the fund by virtue of its unsatisfied debt and the existence of the outstanding warehouse receipt. It is unfortunate that the ultimate question in this case was not initially presented by pleadings because apparently there were no material facts in issue. We believe the Chancellor should permit any necessary further pleadings and proof upon which a proper judgment may be based.

The judgment is reversed for further proceedings consistent with this opinion.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, OSBORNE, PALMORE and REED, JJ., concur.

STEINFELD, J., dissenting.

NEIKIRK, J., not sitting.

STEINFELD, Judge (dissenting).

The majority opinion agreed with the chancellor that the pleadings were confusing and noted that after the case had been submitted and an opinion written, the bank, for the first time, asserted a superior claim to the fund in controversy. This was done in an amended answer. It never filed a pleading alleging a debt due it or sought to assert its lien. It contented itself by alleging a superior claim by reason of the warehouse receipt. On appeal it contended that it had a *lien* on the money in the possession of the receiver.

It is my opinion that the pleadings would not support a judgment in favor of the bank, nevertheless, we are faulting the trial court.

"The parties should be confined in their recovery to that which they are entitled within their allegations." Williamson v. Romans, Ky., 258 S.W.2d 455 (1953). "(I)t is mandatory that the judgment be warranted by the pleadings." Leamon v. Leamon, Ky., 302 S.W.2d 624 (1957); Rose v. Griffith, Ky., 337 S.W.2d 15 (1960) and 49 C.J. S. Judgments § 48, p. 108. "A judgment cannot rest on the evidence alone, unless waived by the opposite party." Howard v. Howard, 264 Ky. 311, 94 S.W.2d 652 (1936); Loew v. Allen, Ky., 419 S.W.2d 734 (1967). I detect no waiver and would affirm the judgment, therefore, I respectfully dissent.