## BRADLEY v. ST. LOUIS TERMINAL WAREHOUSE CO.

### No. 14231.

United States Court of Appeals
Eighth Circuit.

May 29, 1951.

D. D. Panich, Little Rock, Ark. (H. M. Cooley, Jonesboro, Ark., on the brief), for appellant.

John C. Vogel, St. Louis, Mo. (Charles Frierson, Jr., Jonesboro, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On December 7, 1946, Bruce W. Holt, then engaged in business as the Banner Wholesale Grocery Company, Jonesboro, Arkansas, employed the St. Louis Terminal Warehouse Co., a Missouri corporation engaged in business as a public warehouseman and authorized to do business in Arkansas, to furnish Holt with field warehousing service. Pursuant to this contract Holt leased to the warehouse company all the premises occupied by him in his grocery business except the office space preserved by Holt for the conduct of his business.

The leases were in writing and were recorded. Following these transactions the warehouse company established its field warehouse in the leased premises and placed its own locks on the doors leading to the warehouse space. The keys to the locks were at all times in the possession of the bonded agent of the warehouse company. Signs were posted and maintained on the outside and inside of the leased premises in an adequate number of places to warn all persons coming to the bankrupt's place of business of the existence of the warehouse.

On December 18, 1946, the warehouse company, the Citizens Bank of Jonesboro, and Holt entered into a contract called "Agreement of Bailment" under which Holt agreed to store merchandise in the warehouse company's warehouse to be pledged to the Citizens Bank. Merchandise of the wholesale grocery business was stored by Holt in the warehouse and the warehouse company issued to the bank its non-negotiable warehouse receipts therefor. This arrangement was made for the purpose of enabling Bruce W. Holt to borrow money from the bank upon the security of the merchandise deposited in the warehouse and to enable Holt to finance his business operations.

The Agreement of Bailment contained the following provisions with reference to the duties of the warehouse company as bailee:

"3. Bailee shall receive, hold and possess any and all said commodities so delivered to it by Company solely as the agent and for the account and for the sole use and benefit of Bank, and subject to the full order and control of Bank, and that possession of Bailee hereunder shall be deemed and construed to be possession of Bank * * *.

"4. Bailee agrees that during the period of this agreement it will have and maintain open, notorious, continuous, active, and exclusive possession, dominion and control over said demised premises, and of all said commodities delivered by Company to Bailee, subject only to the right, title and interest of Bank hereunder and under said pledge agreement, that Bailee will not permit or suffer Company, or any of its agents, officers or employees, to have access to or ingress or egress to and from the demised premises, except as hereinafter provided, and that Bailee will not permit or suffer Company, or any of its agents, officers, or employees, to have possession of, either actual or constructive, or to exercise any dominion or control over said commodities, or any of them, without the written consent and permission of Bank; and that Bailee will not permit or suffer said commodities, or any thereof, to be removed from the demised premises except as hereinafter provided.

\* \* \* \* \* \*

"8. The Bank authorizes the Bailee to release and deliver to Company, and Bailee is hereby authorized, until notice in writing from the bank revoking or cancelling this authority, to release and deliver to Company upon written request, any inventories of said commodities in the possession of Bailee, in excess of the amount of inventory which Bank shall or may have previously certified to Bailee as the minimum amount of inventory of said commodities required to be on deposit with Bailee, such release to be effective only upon actual delivery of such commodities; Provided, However, that there shall remain at all times in the possession of Bailee not less than the required amount of inventory of said commodities as instructed by Bank in writing; provided, in the event the Bank shall notify Bailee of any change, either increase or decrease, in the amount of inventory of commodities required by the Bank of Company to be kept on deposit with the Bailee as herein provided, (such notice to be in writing from the Bank to Bailee specifying the minimum amount of inventory of commodities which at such time Company is required to deposit and maintain on deposit with the Bailee hereunder; then and in such event Bailee shall not permit withdrawals of any inventory which would reduce the remaining inventory then on deposit below the amount of inventory so required to be on deposit with the Bank * * *."

Merchandise deposited by Holt in the warehouse was delivered to the warehouse

company's bonded agent who made a record of the quantity and description of the merchandise valued at the cost to Holt as shown by his invoices. When merchandise was withdrawn from the warehouse by Holt his sales invoices were delivered to the warehouse bonded agent who made a record of the merchandise withdrawn and authorized its removal. Warehouse receipts were issued at the end of each week covering merchandise received. Every 90 days a physical inventory was made of all merchandise in the warehouse, and new warehouse receipts were then issued to the bank covering the merchandise shown by the physical inventory and all outstanding warehouse receipts were recalled and cancelled. Each week the warehouse company furnished to the bank a statement showing the amount of inventory as reported the previous week and the merchandise received and withdrawn during the week. Holt had no access to the warehouse nor could he withdraw goods except with permission of the warehouse company.

On July 25, 1949, while the warehouse and bailment agreements were still in effect and operation Bruce W. Holt was adjudicated a bankrupt on an involuntary petition filed on July 2. At the time of the adjudication non-negotiable warehouse receipts issued by the warehouse company were outstanding and held by the bank covering the merchandise then in the warehouse.

On August 10, 1949, the first meeting of creditors of the bankrupt was held and certain witnesses, among them the vice president of the warehouse company, were examined in proceedings under section 21(a) of the Bankruptcy Act, 11 U.S.C.A. § 44 (a). At this meeting there was an effort among the interested parties and attorneys to agree on the sale of the merchandise in the warehouse. No agreement was reached. The referee, without further proceedings, dictated an order of sale, the proceeds to be held subject to the same liens as existed against the merchandise prior to the bankruptcy. Counsel for the warehouse company announced that it would not voluntarily surrender the merchandise in the warehouse to the trustee, and insisted that any order of sale provide that the proceeds

of the sale should be held subject to disposition by a court of competent jurisdiction. The referee agreed to this condition in the order, but so far as the record shows the proposed order was never made.

On August 25, 1949, the trustee on an ex parte petition filed with the referee secured an order of delivery directed to one Herbert A. Benjamin, as agent and employee of Bruce W. Holt, directing him forthwith to deliver to the trustee in bankruptcy "any and all keys to the premises used and occupied by Bruce W. Holt, Bankrupt, located in the City of Jonesboro, Arkansas" and "any and all goods, wares, merchandise and other properties of whatever kind and character now in his possession and housed in said leased premises so used, occupied and belonging to said Bruce W. Holt, Bankrupt, and that said delivery be forthwith upon service of this order by a duly authorized officer of the United States District Court for the Eastern District of Arkansas." On the same day the United States Marshal served the order of delivery upon Benjamin who was an employee of Bruce W. Holt and was also the bonded agent of the warehouse company in charge of the keys to the warehouse and in possession of the merchandise stored in it. On demand of the marshal, Benjamin surrendered the keys to the premises and possession was delivered to the trustee in bankruptcy. The order shows on its face that it was made upon the verified petition of the trustee and that no adverse party was represented.

On September 6, 1949, in further proceedings before the referee the trustee presented a petition for an order of sale of the bankrupt assets including the warehouse merchandise. No notice of the filing or hearing of this petition was given to the warehouse company. Counsel for the warehouse company, however, was present, having learned indirectly that the warehouse company's bonded agent, Benjamin, was under subpoena for examination under section 21(a) of the Bankruptcy Act. He declined to enter the warehouse company's appearance in response to the petition for an order of sale, but stated to the referee that the warehouse company was not for-

mally objecting to the sale because it was of the opinion that the sale should be made as soon as possible. He directed the attention of the referee to the allegation in the petition that the trustee was in possession of the warehouse merchandise; denied that the trustee's possession was lawful, asserting on the other hand that possession was obtained as a result of an unlawful conversion and that the warehouse company had never willingly surrendered possession to the trustee. The order of sale was made showing the appearance of the warehouse company by counsel. A copy of the order was sent to the warehouse company by mail in a letter from counsel for the trustee which advised the warehouse company that if no petition for review of the order was filed the sale would be held as quickly as possible. No petition for review was filed and the merchandise was sold on October 11, 1949, for the sum of $31,273.91.

Thereafter, the warehouse company brought this action in the District Court for the Eastern District of Arkansas against the trustee in bankruptcy to recover possession of the fund representing the proceeds of the sale of the warehouse merchandise. The trustee moved to dismiss, alleging (1) that the court lacked jurisdiction because the amount in controversy was less than the jurisdictional amount, since the warehouse storage charges were only $754.06, (2) that the warehouse company was not the real party in interest, (3) that the court lacked jurisdiction because the fund in controversy was within the exclusive jurisdiction of the bankruptcy court, and (4) that no authority had been granted by the bankruptcy court to sue the trustee. The motion was denied, was renewed with great elaboration, and again denied. In his answer the trustee alleged (1) that no portion of the merchandise sold was covered by the outstanding receipts of the warehouse company, (2) that the alleged warehouse agreement and agreement of bailment were void because violative of the Arkansas Bulk Sales Act and executed without consideration as part of a scheme to defraud the creditors of the bankrupt, (3) that the warehouse company was a party to the order of sale and having failed to petition for review could not subject the order to collateral attack, and (4) that at all times prior to bankruptcy Holt was in full possession and control of the merchandise deposited in the warehouse. The answer also contained allegations attacking the validity of the bank's claim against the bankrupt.

The trial court resolved all questions of fact and law against the trustee. Its findings and conclusions are summarized:

(1) The court had jurisdiction by reason of diversity of citizenship of the parties and the requisite jurisdictional amount.

(2) The warehouse company established and at all times maintained a lawful field warehouse in the premises leased from the bankrupt, and at all times including August 27, 1949, the date of the seizure of the warehouse, was in open, visible and exclusive possession of the merchandise in the warehouse.

(3) The referee was without jurisdiction to make the order under which the merchandise was seized. The bankruptcy court acquired no jurisdiction over the merchandise and proceeds of the sale by virtue of its wrongful taking by the trustee.

(4) The warehouse company did not voluntarily surrender possession of the warehouse merchandise to the trustee, did not consent to the exercise of summary jurisdiction over either the merchandise or the proceeds of its sale.

(5) The agreement of bailment between the bank, Holt, and the warehouse company was not entered into for the purpose of defrauding creditors of Holt, but was entered into in good faith for the purpose of giving the bank security for the money borrowed from the bank by Holt and was a valid agreement.

(6) At the time of the seizure of the merchandise the warehouse company had a warehouseman's lien amounting to $754.06 and was entitled to satisfaction thereof out of the proceeds of the sale.

(7) The warehouse company was entitled to the possession of the fund representing the proceeds of sale to be held in lieu of

the merchandise sold less expenses of sale ($28,103.92).

Judgment was entered directing the trustee to pay the net proceeds of the sale over to the warehouse company.

On his appeal the trustee questions the jurisdiction of the Federal District Court on the grounds (1) that the requisite jurisdictional amount is not involved, (2) that the fund in controversy is wholly within the exclusive jurisdiction of the bankruptcy court, and (3) because the action in the District Court was brought without leave of the bankruptcy court. It is also contended that the warehouse company is not the real party in interest within Rule 17(a) of the Rules of Civil Procedure, 28 U.S. C.A., and in any event that the bailment and warehouse agreements are void.

The trustee's attack on the validity of the warehouse and bailment agreements is based upon his insistence that the merchandise in the warehouse was at all material times in the actual possession of the bankrupt. The trustee's claim of possession rests upon his contention that the agreement between the bankrupt and the warehouse company for field warehousing service is in legal contemplation a mere fraudulent device to defeat the jurisdiction of the bankruptcy court; that any field warehousing arrangement of the character involved here is void as against a trustee in bankruptcy. The authorities are all to the contrary.

■ Field warehousing is a term applied to an arrangement whereby a wholesaler or manufacturer finances his business through the pledge of goods remaining on his premises. The arrangement is valid and effective where there is an actual delivery to the warehouseman as bailee who for hire takes and maintains open, visible and exclusive possession of the warehouse goods. The leading case in the Federal courts sustaining the validity of such transactions is Union Trust Co. v. Wilson, 198 U.S. 530, 25 S.Ct. 766, 49 L.Ed. 1154, followed in Heffron v. Bank of America, 9 Cir., 113 F.2d 239, annotated in 133 A.L.

R. at p. 209, where the decisions of many jurisdictions are collected.

■ The court's finding that the warehouse company was at all times material to the issues in this case in open, visible and exclusive possession of all the merchandise delivered into the warehouse is amply supported by the evidence, if, indeed, there is any evidence to the contrary in the record. And while we are not concerned here with the ultimate disposition of the bank's claim against the bankrupt's estate, which may be affected by factors not important in the present case, the court also found that the bailment agreement was entered into between the parties to it in good faith, was not a device to defraud the creditors of the bankrupt, but was a valid agreement to afford security to the bank for money advanced to the bankrupt for the operation of his business; and further, that the bank was at the time of the seizure of the bankrupt's stock in possession of the warehouse company's non-negotiable warehouse receipts in good faith, claiming the receipts and the merchandise represented by them as security for loans made to the bankrupt and the right to require delivery by the warehouse company of the merchandise represented by the receipts. These findings are also supported by substantial evidence and are conclusive on the issues here.

■ What has been said disposes of the trustee's objections to the jurisdiction of the District Court on the ground that the requisite jurisdictional amount was not involved in the action, and also of its contention that the warehouse company was not entitled to maintain the action because not the real party in interest. The rule is that a bailee lawfully in possession may recover for the conversion of or damage to the bailed property while in his possession or may maintain an action to recover possession of the property where it is wrongfully seized by another. In either case the bailor is not a necessary party to the action. National Surety Co. v. United States, 8 Cir., 129 F. 70, 73; City of Chicago v. Pennsylvania Co., 7 Cir., 119 F. 497, 504; The W. C. Block, 2 Cir., 71 F.2d 682, 683;

824

Ferguson & Son v. White, 197 Ark. 183, 121 S.W.2d 894, 896. The action was between citizens of different States, and the value of the merchandise in the warehouse was in excess of the requisite jurisdictional amount.

 We conclude that the trustee's contention that the fund realized from the sale of the warehouse merchandise was within the exclusive jurisdiction of the bankruptcy court must also fail since the merchandise at the time of its seizure by the bankruptcy court was held by the warehouse company under a substantial adverse claim of right. A substantial adverse claim exists when the claimant "discloses a contested matter of right, involving some fair doubt and reasonable room for controversy * * * in matters either of fact or law". Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897. In re Kansas City Journal-Post Co., 8 Cir., 144 F.2d 812, 813. One who holds property of a bankrupt "under substantial claim of right to be secured thereby against actual contingent liability asserted on substantial grounds in good faith holds adversely to the trustee and may not be subjected to turn-over order in summary proceedings"; and "The fact that property held by a third person is allegedly withheld from the bankrupt estate as a result of a fraudulent and preferential transfer does not entitle a bankruptcy court to summarily require that the property be turned over." Schaffer v. Hughes, 8 Cir., 139 F.2d 438, 441, 445. The test of the bankruptcy court's jurisdiction in summary proceedings is possession, actual or constructive, not title, of the bankrupt at the time of the filing of the petition in bankruptcy. Milens v. Bostian, 8 Cir., 139 F.2d 282, 284; Duda v. Sterling Mfg. Co., 8 Cir., 178 F.2d 428, 433, 14 A.L.R.2d 899; Kelso v. Maclaren, 8 Cir., 122 F.2d 867, 869.

 Due process—notice and the opportunity to be heard—is as essential to the validity of orders in a summary proceeding as in plenary actions. The bankruptcy court was not required to accept the warehouse company's claim of adverse possession. It had the power as well as the duty to enter upon a preliminary investigation to determine whether the claim of the warehouse company was substantial or merely colorable, and to retain or decline jurisdiction of the controversy in accordance with its finding at a hearing after notice to the warehouseman. Necessary to its jurisdiction was a finding by the bankruptcy court that the claim of the warehouse company was merely colorable. Here there was neither a hearing nor pretense of a hearing and, of course, no finding of the invalidity of the claim of the warehouse company.

 The property which the warehouse company claimed to hold adversely to the trustee was seized in ex parte proceedings without notice to the warehouse company, but after notice of its claim of adverse possession and its refusal to submit to the jurisdiction of the bankruptcy court. A judgment obtained without due process is a nullity and may be attacked directly or collaterally by parties or strangers. The bankruptcy court, never having acquired jurisdiction of the property sold, never acquired jurisdiction of the fund in the hands of the trustee as the result of the sale. A trustee in bankruptcy can not obtain possession of property held adversely by wrongful seizure of it. The bankruptcy court acquires no jurisdiction over the property or its proceeds by possession so acquired. To hold otherwise would be to say that the court of bankruptcy may acquire a jurisdiction forbidden by statute. Chandler v. Perry, 5 Cir., 74 F.2d 371, 373; First National Bank of Chicago v. Chicago Title & Trust Co., 198 U.S. 280, 291, 25 S.Ct. 693, 49 L.Ed. 1051; New York Credit Men's Ass'n v. Manufacturers Discount Corp., 2 Cir., 147 F.2d 885, 888.

The Arkansas Bulk Sales Law has no application to transactions of the character involved in this action. Ark.Stats.1947, Sec. 68–1504.

 The trustee's contention that the District Court should dismiss the action because of failure of the warehouse company to secure permission of the bankruptcy court to sue its trustee is without

merit. The bankruptcy court never had lawful possession or jurisdiction of the fund involved in the action. The rights of the trustee were not prejudiced nor was the jurisdiction of the bankruptcy court disturbed by a plenary action in the very court in which the trustee was required to submit his claim to possession of the fund in dispute.

The judgment of the District Court is affirmed.