**William B. BOSTIAN, Trustee in Bankruptcy of the Estate of Raymon H. Banner, an individual, doing business as Banner Sewing Machine Company, Appellant,**

v.

**PARK NATIONAL BANK OF KANSAS CITY, Appellee.**

**No. 15341.**

United States Court of Appeals
Eighth Circuit.

Nov. 9, 1955.

Thomas D. Circle, Kansas City, Mo. (W. Arnold Brannock, Kansas City, Mo., was with him on the brief), for appellant.

Elmer B. Hodges, Kansas City, Mo. (M. George Russell, Kansas City, Kan., was with him on the brief), for appellee.

Before JOHNSEN, COLLET and VAN OOSTERHOUT, Circuit Judges.

COLLET, Circuit Judge.

The primary question presented on this appeal is whether a field warehousing agreement entered into between Raymon H. Banner, doing business as the Banner Sewing Machine Company, and the St. Louis Terminal Warehouse Company constituted a valid pledge of the property placed in the warehouse with the result that a creditor of Banner, the Park National Bank, acquired a valid lien on the property through warehouse receipts covering the property which was good against Banner's other creditors after he was declared a bankrupt. If there was no such valid lien in favor of the Bank, the question will then arise as to whether the Bank had reasonable cause to believe that Banner was insolvent at the time it, the Bank, subsequently took concededly valid warehouse receipts. The date of the taking of these subsequently taken warehouse receipts was only about ten days prior to the date of bankruptcy by Banner and within the period when it would have been a voidable preference at that time if the Bank had reasonable cause to believe that Banner was insolvent.

The facts are comparatively simple. Banner was operating both a wholesale and retail business. He had an established line of credit with the Bank which had been running for several years. For the purpose of financing his operations, Banner arranged with the St. Louis

Terminal Warehouse Company to establish a warehouse at Banner's place of business. This was done by the enclosure of a considerable area of the premises, which was leased by the warehouse company. The enclosed area was provided with a gate secured by a lock. Large signs were conspicuously posted, giving notice that the premises and the contents thereof were in the possession of and under the control of the warehouse company. When Banner purchased merchandise it was placed in the warehouse and warehouse receipts were issued therefor. The warehouse receipts were nonnegotiable and were pledged to the Bank to secure the Bank's loans to Banner. The formal regularity and sufficiency of the steps taken to make the warehousing arrangement and the warehouse receipts valid are not open to serious question. On their face they are valid. The difficulty arises from the manner in which the formal agreement was executed.

The warehouse company employed an agent to operate the warehouse. He had other regular employment at a hotel and spent little time looking after the warehouse. He left the key to the warehouse with Banner and Banner's wife at their place of business adjoining the warehouse. Banner kept the inventory of merchandise which was placed in the warehouse and removed therefrom. At all times Banner had access to the warehouse and its contents. He could and did remove merchandise from it as it was sold. But always when merchandise was removed, Banner either got an order of release from the Bank to do so in advance, or by advance arrangement with the Bank, sales of merchandise were made on a C.O.D. basis to the purchaser with the C.O.D. payment to be made direct to the Bank. A copy of the orders of removal was sent to the warehouse company's office at St. Louis, Missouri. The inventory was continuing and perpetual. It was always accurate. There was no fraud or surreptitious re-

moval of merchandise. The vice in the execution of the arrangement which the Trustee in Bankruptcy contends was fatal to the validity of the Bank's lien is that Banner had access to the warehouse and its contents at all times. The Trustee says that fact prevented the warehouse company from having the possession and control of the merchandise necessary and essential to a valid field warehousing arrangement. The record does not disclose that the warehouse company or the Bank knew that the agent was leaving the key to the warehouse with Banner.

About July 1, 1954, shortly before the date of Banner's bankruptcy, he terminated the warehousing arrangement with the St. Louis Terminal Warehouse and placed all but a small part of the merchandise in a bonded warehouse which issued warehouse receipts to the Bank. The remainder was placed on the floor at his place of business and a chattel mortgage given the Bank thereon. These warehouse receipts and the chattel mortgage were substituted for the old warehouse receipts as security for the Bank's loans to Banner. As heretofore stated, the validity of this latter arrangement is not questioned.

After bankruptcy, the Bank sought leave to foreclose on its security under the warehouse receipts issued by the St. Louis Terminal Warehouse Company, its subsequently acquired warehouse receipts from the bonded warehouse, and the chattel mortgage. The Referee in Bankruptcy made findings of fact, substantially as above related, and, without specifically deciding whether or not the original field warehousing receipts were invalid, held that any technical defect in those receipts caused by the conduct of the warehouse company [agent] was cured by the subsequent valid warehouse agreement and arrangement made about July 1, 1954, citing the case of Columbia Savings Bank v. Limerick, Mo. App., 216 S.W.2d 119, as authority therefor.[1] In view of that conclusion, the

---

1. The Referee stated: "Without specifically deciding whether or not the field warehousing receipts were invalid, we are of the opinion that the technical defect, if

Referee found it unnecessary to determine whether the Bank had reasonable cause to believe Banner was insolvent on July 1, 1954. Permission to foreclose was granted. Upon review the District Court found that there was adequate evidence to support the Referee's findings of fact, and that his legal conclusions were justified under the law. The order of the Referee was therefore sustained and the Trustee appealed.

■ For a pledge of this nature to be valid and effective there must be either an actual or constructive delivery of the property to the warehouse. One of the cardinal reasons for that requirement is to prevent fraud and deception which could otherwise result from the natural assumption of one dealing with the pledgor that he was the absolute owner of the property, absent notice to the contrary. Casey v. Cavaroc, 96 U.S. 467, 24 L.Ed. 779. No inexorable process of delivery is required to accomplish the foregoing purpose. Where the method followed results in the accomplishment of the objective of the requirement, the pledges have been held valid. Union Trust Co. v. Wilson, 198 U.S. 530, 25 S. Ct. 766, 49 L.Ed. 1154; Bradley v. St. Louis Terminal Warehouse, 8 Cir., 189 F.2d 818; Grand Avenue Bank v. St. Louis Union Trust Co., 135 Mo.App. 366, 115 S.W. 1071; Manufacturers Acceptance Corp. v. Hale, 6 Cir., 65 F.2d 76; Pittman v. Union Planters National Bank & Trust Co., 6 Cir., 118 F.2d 211. In cases where ·the procedure followed did not accomplish the result of giving adequate notice of the pledge and lack of ownership or qualified ownership, the pledge was held invalid. Casey v. Cavaroc, 96 U.S. 467, 24 L.Ed. 779; American Can Co. v. Erie Preserving Co., 2 Cir., 183 F. 96; In re Rodgers, 7 Cir., 125 F. 169; Security Warehousing Co. v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117.

■■ In this case the court found that Banner gave the St. Louis Warehouse Company exclusive possession and control of the leased premises, that the lease was duly recorded, the premises were adequately segregated and enclosed, and that notices were prominently posted calling attention to the fact that the premises and contents were under the possession and control of the warehouse company. These findings are adequately supported by the record. · They justified the court's conclusion that the legal requirement of delivery of possession and adequate notice of the qualified ownership of Banner had been met. And although, as the Referee and the trial court pointed out, the laxity of the warehouse company's agent opened the door to possible fraud. The agent's conduct did not in his case materially change or destroy any of the essentials to the validity of the pledge, i. e., the transfer of possession and control of the enclosure and merchandise, and the notice to the public of Banner's qualified ownership of the property.

■ It is not necessary to the validity of a field warehousing arrangement that the pledgor have no access to the property pledged so long as the arrangement followed to permit the pledgor's ready access to the pledged property does not destroy the essentials noted. Conceivably the latter could result from the conduct of a caretaker or agent. But the procedure followed here only provided an opportunity for fraud and dishonest conduct on the part of the pledgor (which did not occur). It did not materially change the appearance of the surroundings in which the pledged property was kept, the notice to anyone concerned that the property was pledged or hypothecated, or tend to deceive anyone into believing that Banner was the sole owner of the property. The pledge and

any, in the receipts caused by the conduct of the warehouse company was cured when the bankrupt voluntarily moved the merchandise into the bonded warehouse of the American Warehouse and Storage Company whose receipt is now held by the bank. This rule of law was announced in the case of Columbia Savings Bank v. Limerick, 1948, St. Louis Court of Appeals, Mo.App., 216 S.W.2d 119."

the warehouse receipts were valid. The trial court was correct in so holding.

The Referee indicated that some reliance was placed upon Columbia Savings Bank v. Limerick, Mo.App., 216 S.W. 119, to support the validity of the warehousing arrangement and the warehouse receipts. The Trustee contends the Limerick case does not sustain the validity of the pledge or the warehouse receipts. The pledge and the warehouse receipts herein involved were valid without resort to the theory of the Limerick case. For that reason that case need not be analyzed or discussed. For the same reason it is unnecessary to consider the question of whether the Bank had reasonable cause to believe that Banner was insolvent when the subsequent warehousing arrangement was made with the bonded warehouse about July 1, 1954, and new warehouse receipts and a chattel mortgage were taken by the bank.

The judgment is affirmed. The cost of printing the supplemental record filed by appellee will be taxed to appellant.