**UNITED STATES of America,**
**Plaintiff,**

v.

**Leo NEIWIRTH, Esq., Receiver in Bank-**
**ruptcy for Mid-Center Redevelopment**
**Corp., Defendant.**

**Civ. No. 1603–73.**

United States District Court,
D. New Jersey.

Feb. 19, 1974.

Jonathan L. Goldstein, U. S. Atty. by
William A. Carpenter, Jr., Asst. U. S.
Atty., Newark, N. J., for plaintiff.

Kleinberg, Moroney, Masterson &
Schachter by James E. Masterson, New-
ark, N. J., for defendant.

## OPINION AND ORDER

LACEY, District Judge:

This is an action by the United States
against a Chapter XI Receiver for the
debtors Mid-Center Redevelopment Cor-
poration (Mid-Center), Arthur H. Padu-
la Construction Corporation and Arthur
H. Padula.  The plaintiff seeks an ac-
counting of the source and distribution
of $664,000 deposited with the Receiver

pursuant to the order confirming the Plan of Arrangement in Chapter XI on December 18, 1972. Sought too is the imposition of a constructive trust upon funds in the amount of $262,700, allegedly wrongfully transferred by the Receiver, as hereinafter discussed, from Gregory Park Section II, Inc. (GP 2), a New Jersey corporation, to the estate in his name.[1]

The instant action is only a single strand in the complex web of litigation pending in the bankruptcy court and before me, involving the aforesaid debtors. See this court's prior opinions in Gregory Park Section 3, Inc. v. Lynn, Civil No. 1562–73 (motion to dismiss) (December 10, 1973) and In re Mid-Center Redevelopment Corp., B. 1115–70 (petition for review in bankruptcy) (January 3, 1974, 1 F.B.A. 567). See also opinions in United States v. Gregory Park Section II, Inc. (proceedings concerning appointment and powers of a temporary receiver of rents and profits) (September 21, 1973; and October 1, 1973, 1 F.B.A. 351).

After the United States moved herein for a preliminary injunction prohibiting the Receiver's disbursement of the disputed funds, and before determination of that motion, the Receiver in turn moved under Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. The United States has invoked this court's jurisdiction under 28 U.S.C. § 1345 (suits by the United States as a plaintiff); however, the Receiver seeks to dismiss the action as one dealing with property within the exclusive summary jurisdiction of the bankruptcy court. Thus, although not elucidated in the Receiver's papers, he apparently contends the instant action is within the "except as otherwise provided by Act of Congress" exception of § 1345.[2] The Receiver does not oppose entry of a pre-liminary injunction should this court find it has subject matter jurisdiction.

■ On this motion to dismiss, the Complaint's well pleaded allegations will be accepted as true. Walling v. Beverly Enterprises, 476 F.2d 393, 395 (9th Cir. 1973); Lasher v. Shafer, 460 F.2d 343, 344 (3d Cir. 1972); Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir.), cert. denied, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972). I will consider as well, on the motion, to the extent they are not inconsistent with the Complaint, the facts embodied in the affidavit of the Receiver, Leo Neiwirth, Esq., filed in support of his motion on December 21, 1973, and in his testimony before me on the same date, in United States v. Gregory Park Section 3, Inc., Civil No. 1734–73.

Mr. Neiwirth was appointed a Receiver in the aforesaid Chapter XI proceeding on September 18, 1970. Because the debtors owned all the stock in GP 2 and, as well, Gregory Park Section 3, Inc. (GP 3), he proceeded after and on the basis of his appointment to oversee the receipts, disbursements and operations of the Gregory Park apartments, even though GP 2 and GP 3 were not themselves debtors or the property of debtors. (See also Complaint ¶ 8).

The Complaint alleges that on or about May 27, 1971, GP 2, "which had defaulted on the HUD held mortgages" on its buildings 1 and 2, entered into Provisional Work-Out Arrangements (hereinafter agreement) with the Secretary of HUD which relieved GP 2's default and established a new payment schedule delaying amortization payments. Paragraph 4 of the agreement prohibited commingling of funds among the various Padula projects or advances to affiliates, which would include GP 2, GP 3, and others, and provided that such action would result in cancellation of the

---

1. It is noted that this transfer is also relied upon by the United States as an act of default in United States v. Gregory Park Section II, Inc., Civ. No. 1310–73, a suit for foreclosure on mortgages held by the Department of Housing and Urban Development on the buildings which are the assets of GP 2.

2. See § 311 of the Bankruptcy Act, 11 U.S.C. § 711.

agreement. The same paragraph also contains an inserted typewritten clause providing that "[a]ny excess funds over and above those herein required may be used to implement the Chapter 11 proceedings." Mr. Neiwirth states that he, purporting to act on behalf of GP 2, authorized and directed negotiation of the agreement and that the aforesaid typewritten clause was negotiated by one of the debtors, Mr. Padula, with HUD, after discussion with him.[3] Mr. Neiwirth further states that it was under and pursuant to this added clause that he, acting as Receiver for the debtors, made the challenged transfer of $262,700 of GP 2's funds to the debtor Mid-Center upon confirmation of the Plan of Arrangement on December 18, 1972, in order to fund the Plan.

Prior to this transfer the Receiver, presuming to act for both Gregory corporations (GP 2 and GP 3), had had certain of their funds put into certificates of deposit in the respective corporate names. To accomplish the transfer, he caused these certificates to be surrendered and replaced by new certificates issued in his name as Receiver for Mid-Center. Thus did the funds of GP 2 go into the estate.

The Receiver contends that the funds transferred were in excess of those required to be paid to HUD under the agreement, and that he thus was authorized by said agreement to act as he did. However, the pertinent allegations in the Complaint which at this point must be accepted as true read:

34. In December 1972, defendant, Leo Neiwirth, Esq., knew, or should have known, that Gregory Park Section II, Inc. was indebted to plaintiff under the terms of the applicable Provisional Work-Out Arrangements in an amount exceeding $262,700.

35. The payment of $262,700 by Gregory Park Section II, Inc. to defendant in December 1972 violated paragraph 4 of the Provisional Work-Out Arrangements . . . in that the aforesaid sum was not an excess over and above the amount needed to meet the monthly payments required under the Work-Out Arrangements, and thereby also violated the applicable mortgages, Regulatory Agreements, and the National Housing Act.

Thus there is charged a violation of the agreement and a default under the mortgage.

Apparently in anticipation of the United States filing its action for foreclosure, see n. 1, *supra,* on August 2, 1973 the Chapter XI debtors had obtained an order from the Referee temporarily restraining such action. That order, however, was vacated on September 10, 1973, the Referee ruling that he lacked jurisdiction over the property of GP 2, since it was not a debtor, nor the property of a debtor, in the Chapter XI proceeding, notwithstanding all the GP 2 stock was owned by the debtors. Review of this decision was never sought by either the debtors' attorney or the Receiver.[4]

Although the Complaint challenges the Receiver's transfer of GP 2's funds to the debtor Mid-Center as violative of the agreement, the Receiver's motion to dismiss raises more fundamental questions concerning his *power* to act.[5] First, did

3. Mr. Padula's status in the GP 2 and GP 3 enterprises is such that it can be said that, directly or indirectly, he owned and controlled them. A more detailed delineation of his roles is embodied in opinions filed in the connected matters hereinabove mentioned.

4. Counsel for the debtors did ask for a stay of the Referee's order so that a petition for review could be filed. *See* T 49 of September 10, 1973 hearing. The stay was denied. Then a petition for review was filed on Sep-

tember 10, 1973 but review was never pursued. A stipulation of dismissal of this petition was filed on February 1, 1974.

5. While plaintiff's brief argues that the Receiver lacked the power to do what he did, the Complaint does not raise the issue.

It may be argued subsequently that the Government, in entering into the agreement with the Receiver for GP 2, is now estopped from challenging his authority to act for GP 2. This argument, however, does not affect

the Receiver have authority by virtue of his appointment to act on behalf of GP 2 in taking its funds? If so, did he have the authority under his appointment to borrow the sum of $262,700 and put it in the estate, all without an order from the Referee?[6] It is only after resolving these questions of the Receiver's basic power to act on behalf of (1) GP 2, and (2) the debtors, that the issues then focus on the propriety of that action under the agreement: that is, did the Receiver violate any fiduciary obligation, analogous to that of an officer, director, or controlling stockholder to a corporation or its creditors, in depriving GP 2 of substantial liquid assets;[7] and was the agreement breached by the transfer? Since I resolve the jurisdictional motion on the basis of the first of the above questions, that is, the Receiver's authority to act on GP 2's behalf, I shall refrain from discussing and deciding the remaining issues on this motion.

■ The Receiver's simplistic approach on his application is to argue, as has been stated, that since the disputed funds are within his possession, any suit in connection therewith is within the exclusive summary jurisdiction of the bankruptcy court, and cannot be maintained here as a plenary action. Although not analytically developed, it is also implied in the notice of motion that this court is even without jurisdiction to decide the question of its jurisdiction. That implication is of course rejected.[8]

The Receiver's moving papers and brief reflect a misconception of the nature of this suit. He views it as if GP 2, the mortgagor, is a debtor in the Chapter XI proceeding. His Memorandum's factual statement avers that he, the Receiver, acting for GP 2, entered into a "workout" arrangement with HUD, the mortgagee, and that HUD is now claiming that he, the Receiver, is in default under the agreement and contending, therefore, that HUD's funds are being improperly held by him. Put another way, this recital is founded upon the erroneous assumption that the Receiver entered into an agreement with HUD, while acting for a debtor, or in connection with property of a debtor, and that this suit is simply one for breach of contract. GP 2 is not a debtor, and, as the Referee ruled, its property is not that of a debtor.

The Receiver's misconception is totally bared by his mistaken invocation of what is of course black letter law from 2 Collier on Bankruptcy ¶ 23.04 [1], at 450 (14th ed. 1971):

Once the petition has been filed, the bankruptcy court's jurisdiction is paramount and no other court may by order or decree deprive it of this jurisdiction. With respect to all proceedings in bankruptcy in the course of administration, the bankruptcy court may act summarily and in that manner determine the rights of parties affected. [footnotes omitted]

Thus he likens the instant suit to "proceedings in bankruptcy in the course of administration."[9] Additionally, he relies upon United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055 (1912), involving the priority to be given to certain claims in a bankrupt estate; and he argues that

the court's subject matter jurisdiction, which of course cannot be created by consent of the parties. *E. g.*, Beach v. KDI Corp., 490 F.2d 1312 (3d Cir. 1974).

6. Mr. Neiwirth testified he regarded the transaction as a loan from GP 2 to him as Receiver for Mid-Center. This court has seen no note evidencing the transaction.

7. *See* Brown v. Presbyterian Ministers Fund, 484 F.2d 998, 1005 (3d Cir. 1973); In re Miller, 485 F.2d 74, 78 (5th Cir. 1973).

8. It is clear that this court, as a court of general jurisdiction has the power to determine whether it possesses jurisdiction. Texas & Pacific Railway Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578 (1925); In re Trimble Co., 479 F.2d 103, 109 (3d Cir. 1973).

9. The above quoted passage is taken from the subsection of the treatise entitled "Summary Jurisdiction Over Matters of Administration."

the Supreme Court in *Bray* (Receiver's Memorandum p. 4):

> . . . observed that the monies in the Trustee's hands, as here, arose in the due administration of the estate and was lawfully in the custody of the Bankruptcy Court, and awaiting distribution among such creditors as are entitled to participate therein;

and that *Bray* involved the distribution of a fund in the Trustee's possession "admittedly belonging to the bankrupt's estate."

■ In relying upon the cited authority, the Receiver fails to recognize that by his motion he has brought to the foreground what underlies the Government's suit, that GP 2's $262,700, quite aside from the breach of contract issue, does not properly belong in the debtors' estate and is not lawfully within the custody of the bankruptcy court because the Receiver acted in excess of his power and authority in taking these moneys from GP 2.

Thus the instant action is not one involving the administration of the debtors' estate. Beyond that, it cannot be validly argued that the instant action, to recover property now in the possession of the bankruptcy court, is a controversy arising in proceedings in bankruptcy, thus falling within the bankruptcy court's exclusive summary jurisdiction by virtue of that court's possession of the disputed fund. *See* 8 Collier on Bankruptcy ¶ 3.01 [6], 3.02 (14th ed. 1971). Such an argument ignores the timing of the disputed transfer, and suggests as appropriate a discussion of the Receiver's basic power to so acquire possession for the bankruptcy court.

Unlike funds properly within the debtors' estate at the time of the filing of the Chapter XI petition, here the disputed transfers were not made until after said filing, and only upon the confirmation of the Plan of Arrangement. Moreover, the Receiver testified that the transfers were made by him on his own, purporting to act both for GP 2, the lender, on the one hand, and the debtors, the borrowers, on the other, without formal corporate approval by GP 2, without formal approval of the bankruptcy court, without benefit of an opinion of counsel, and without notice to the United States, a substantial creditor and mortgagee, as well as a party to the agreement upon which the Receiver claims to have relied.

Instructive is Bradley v. St. Louis Terminal Warehouse Co., 189 F.2d 818 (8th Cir. 1951), which, because of appositeness, I shall analyze at length. There a warehouse company, as claimant to certain merchandise, sued the trustee in bankruptcy in district court to recover possession of a fund representing the proceeds of sale of the claimed merchandise. The debtor therein, prior to the filing of a petition in bankruptcy, had borrowed money from a bank, secured by his stock in trade as to which a field warehousing arrangement was established, tendering possession of his inventory to the warehouse company as agent for the bank. Upon the filing of the bankruptcy petition, the trustee, moving *ex parte* before the Referee, obtained possession of the merchandise by an order of delivery directed against an employee of the debtor who was also the bonded agent for the warehouse company in charge of the warehouse keys. Subsequent to the sale of the merchandise in question the warehouse company filed the plenary action in district court, whereupon the trustee moved to dismiss, claiming, *inter alia*, that the district court lacked jurisdiction over the action because the fund in controversy was within the exclusive jurisdiction of the bankruptcy court. The court rejected this claim, ruling that the Referee was without jurisdiction to make the order under which the merchandise was seized, and that the bankruptcy court could not acquire jurisdiction over the merchandise and proceeds of the sale as a result of the wrongful taking by the trustee. The court of appeals affirmed, finding a lack of due process in the summary proceeding before the referee, in that the warehouse company was not given notice or an opportunity to be heard. The

court reasoned that essential to the jurisdiction of the bankruptcy court was a finding that the claim of the warehouse company, holding the property at the time of seizure under an adverse claim of right, was merely colorable. The court found no such finding; indeed a hearing had not even been held. After stressing the nature of the *ex parte* proceeding with its concomitant lack of notice to the warehouse company, the court stated:

> A judgment obtained without due process is a nullity and may be attacked directly or collaterally by parties or strangers. The bankruptcy court, never having acquired jurisdiction of the property sold, never acquired jurisdiction of the fund in the hands of the trustee as the result of the sale. *A trustee in bankruptcy can not obtain possession of property held adversely by wrongful seizure of it. The bankruptcy court acquires no jurisdiction over the property or its proceeds by possession so acquired.* To hold otherwise would be to say that the court of bankruptcy may acquire a jurisdiction forbidden by statute. [citations omitted] [emphasis supplied]
> 189 F.2d at 824.

In the matter *sub judice*, the contested transfer occurred after the filing of the bankruptcy petition, and was made without an order of the bankruptcy court. The Receiver, without regard to corporate distinctions, made a unilateral taking without notice to the party to the agreement upon which he claimed to have been relying, the United States; and he was only able to effect the transfer of property of GP 2 by acting in his self-declared position of overseer of that corporation's property, the very property over which the Referee has explicitly ruled he had no jurisdiction.

█ It is of course clear that the bankruptcy court has only such jurisdiction as is conferred by statute. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924). Section 311 of the Bankruptcy Act, 11 U.S.C. § 711, vests the bankruptcy court with "exclusive jurisdiction of the debt-

or, *and his property, wherever located.*" [emphasis supplied] Since the funds transferred, as property of GP 2, were not the property of the debtors, the bankruptcy court did not possess summary jurisdiction over these funds to cause them to be transferred to the debtor. *See* Kaplan v. Guttman, 217 F. 2d 481, 484–85 (9th Cir. 1954). *See also* In re Texas Consumer Finance Corp., 480 F.2d 1261 (5th Cir. 1973). Thus, since the authority of the Receiver only allows him, upon authorization of the court, to manage the "property of the debtor," 11 U.S.C. § 743, he acted without any authority in transferring GP 2 assets to himself as Receiver for the debtors, a wrongful seizure which, as the court stated in *Bradley*, cannot be used to vest jurisdiction in the bankruptcy court. *See also* City and County of Denver v. Warner, 169 F.2d 508, 512 (10th Cir. 1948).

Accordingly, because the instant action does not fall within the exception to 28 U.S.C. § 1345, the Receiver's motion to dismiss is denied; and it is so ordered.

Please submit a consent order on the matter of the preliminary injunction within three days of the filing hereof.