NYTCO SERVICES, INC., Plaintiff,

v.

HURLEY'S GRAIN ELEVATOR CO.
et al., Defendants.

No. C-75-110.

United States District Court,
W. D. Tennessee, W. D.

July 28, 1976.

Everett B. Gibson, Memphis, Tenn., for plaintiff.

Daniel R. Elkins, Richard A. Peebles, Baytown, Tex., Ben Arnold, Little Rock, Ark., William Walsh, Memphis, Tenn., Gerald W. Carlyle, Newport, Ark., John T. Williams, Little Rock, Ark., Pleasants & Adams, Lee L. Piovarcy, Memphis, Tenn., Herbert C. Rule, III, Little Rock, Ark., T. B. Fitzhugh, Augusta, Ark., David A. Hodges, B. Richard Allen, Max O. Bowie, Newport, Ark., Stanley R. Langley, Jonesboro, Ark., Paul Benham, John Haley, Little Rock, Ark., Harkey & Warmsley, Batesville, Ark., Isaac Scott, Little Rock, Ark., Pickens, Boyce, McLarty & Watson, Newport, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

WELLFORD, District Judge.

The question before the Court pertains to jurisdiction in light of the commencement and continuation of bankruptcy proceedings involving the defendant, Hurley's Grain Elevator Co., and numerous Hurley-related enterprises in the Bankruptcy Court in the Eastern District of Arkansas.

A prior challenge by some of the defendants to this Court's jurisdiction over this cause of action prompted an Order, entered June 2, 1975, sustaining the action as properly brought under the interpleader statute, 28 U.S.C. § 1335. Specific reference to that prior Order is hereby made for a statement of the factual background leading up to that action.

The present jurisdictional dispute originated with the filing of Chapter XI bankruptcy petitions by debtors, W. F. Hurley, Inc., Denton Brothers, Inc. and Hurley Grain Elevator Co., in the United States District Court for the Eastern District of Arkansas, on May 28, 1975.[1] Subsequently, on or about August 22, 1975, the Bankruptcy Judge granted the debtors' motion to convert to Chapter X bankruptcy.

The debtors' trustee in bankruptcy, the defendant farmer-producers, and the defendant, White River Production Credit Association, take the position that the bankruptcy proceeding preempts this action, under the automatic stay provided in Rule 11–44(a), Chapter XI Rules, the stay issued by the Bankruptcy Judge, and either § 111 (11 U.S.C. § 511—Chapter X) or § 311 (11 U.S.C. § 711—Chapter XI) of the Bankruptcy Act.

Rule 10–102, Chapter X Rules (effective August 1, 1975) provides: "When a case commenced under another chapter of the Act proceeds under Chapter X, the Chapter X case shall be deemed to have been originally commenced as of the date of the filing of the first petition initiating a case under the Act." It is not significant therefore that the bankruptcy proceeding was originally commenced under Chapter XI reorganizational standards. The "exclusive jurisdiction" sections of both Chapters X and XI are, however, virtually identical. The Chapter X provision, 11 U.S.C. § 511, provides (with the applications of the Chapter XI section, 11 U.S.C. § 711, set out in parentheses):

> Where not inconsistent with the provisions of this chapter, the court in which a (the) petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its (his) property, wherever located.

Plaintiff, NYTCO, and defendant, First National Bank of Memphis (hereinafter "Bank"), have taken the position that the bankruptcy court lacks summary jurisdic-

---

1. Eight more bankruptcy cases involving various Hurley enterprises were filed in the United States District Court for the Southern District of Texas, and subsequently transferred to the Eastern District of Arkansas and consolidated with the cases filed there.

tion over the property in question,[2] because the debtors cannot meet either the possession or ownership tests for determining when "exclusive" summary jurisdiction attaches.

The following questions have been presented for this court's determination:

(1) Does this Court have authority to proceed to a determination of the jurisdictional questions raised, after commencement of the bankruptcy proceeding and the Bankruptcy Judge's stay order?

(2) Is the appropriate test of the bankruptcy court's summary jurisdiction in a Chapter X proceeding "possession" or "title"?

(2)(a) If "possession" is the test, does NYTCO and/or the Bank have a "substantial adverse claim" of right to possession so as to deprive the bankruptcy court of summary jurisdiction?

(2)(b) If "title" is the test, does a secured creditor of the debtor (here, Bank) holding warehouse receipts have a "substantial adverse claim" of title to the commodities represented by the receipts, so as to deprive the bankruptcy court of summary jurisdiction?

(3) Is the national bank venue provision (12 U.S.C. § 94) rendered inoperative here by (a) a waiver on Bank's part, (b) preemption by the broad jurisdiction granted bankruptcy courts in reorganizations and arrangements, or (c) bankruptcy being a proceeding *in rem* for the benefit of, and not "against", creditors (specifically, Bank)?

## (1) AUTHORITY TO DETERMINE JURISDICTION

The Court must first determine whether it does have jurisdiction and authority to decide jurisdiction and thereby resolve the question of whether the bankruptcy proceeding has stayed or preempted further action in this case. *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114 (CA 10, 1974); *Standard Oil Co. of N. J. v.*

*Defense Plant Corp.*, 57 F.Supp. 13 (S.D.N.Y.1944). This cause of action, of course, preceded the Bankruptcy filing.

In "straight" bankruptcy proceedings (Chapters I–VII of the Bankruptcy Act), the bankruptcy court's summary jurisdiction over controversies arising in the course of the proceedings is conditional upon the bankrupt having actual or constructive possession of the disputed property (or claimant's consent to jurisdiction of the bankruptcy court). Where a third-party is in actual or constructive possession asserting a substantial adverse claim of right, that claim must be determined in a plenary suit, not a summary proceeding in an ordinary bankruptcy case. 2 *Collier on Bankruptcy* ¶¶ 23.04–23.06 (14th ed. 1971).

The test of whether a claim is substantial has been stated to be:

> . . . [a claim] is to be deemed of a substantial character when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' (citation omitted), in matters either of fact or law; and is not to be held merely colorable unless the preliminary inquiry shows that it is so insubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit and a mere pretense.

*Harrison v. Chamberlin*, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897 (1926).

### (2) POSSESSION AS TEST

In *Bradley v. St. Louis Terminal Whse. Co.*, 189 F.2d 818 (CA 8, 1951), it was held that a field warehouseman, claiming a right to possession of goods under an "Agreement of Bailment" with the "bailor" (who went into bankruptcy) and asserting a storage lien, was not subject to the summary jurisdiction of the bankruptcy court and was entitled to proceeds from sale of the goods ordered by the bankruptcy court. The warehousing arrangement there was

---

**2.** On its merits, this action involves title to soybeans and rice of substantial quantity and value. With the joint approval of this Court and the Bankruptcy Judge, the commodities were sold and title claims to the proceeds of that sale are now at issue. See Memorandum Opinion entered July 28, 1975.

found to be made in good faith and not a mere sham nor a device to defraud creditors of the bailor bankrupt. The warehouseman was found to have been in "open, visible and exclusive possession" of the goods. *Id.* at 823. The Court further impliedly found that constructive possession of the goods had rested with the Bank which loaned money to the bailor and held non-negotiable warehouse receipts to the goods. *Bradley v. St. Louis Terminal Whse. Co., supra.*

Here, NYTCO asserts that it has been acting under contract as a field warehouseman, and has maintained possession of the commodities at the time Hurley went into bankruptcy. The Bank asserts that it, as holder of non-negotiable warehouse receipts to the commodities, was in constructive possession. The other creditors concerned take the position that the warehousing arrangement was a mere sham.

The question of whether the warehousing arrangement was valid or merely colorable, a sham, bears on whether substantial adverse claims of possession are presented. A warehouseman having "actual, open and exclusive possession" would assert such a substantial claim. *Bradley v. St. Louis Terminal Whse. Co., supra; Pittman v. Union Planters Nat'l. Bank & Trust Co.,* 118 F.2d 211, 214 (CA6, 1941), *cert. den.,* 314 U.S. 632, 62 S.Ct. 65, 86 L.Ed. 507 (1941); see generally, White and Summers, *Uniform Commercial Code,* § 20–5, pp. 708–709 (1972).

■ The Court has considered literally thousands of pages of discovery and/or evidentiary depositions and the record before it—testimony before this Court and before the Bankruptcy Judge, the voluminous deposition testimony (particularly as specifically designated by counsel subsequent to the hearing on February 19, 1976), the documents and other numerous exhibits, the arguments and thorough briefs submitted throughout the pendency of this cause. The Court finds that NYTCO and the Bank

have carried the burden of establishing substantial, adverse claims by way of actual and/or constructive possession, respectively, of the commodities in question. It is argued that possession by NYTCO was not in every respect exclusive of Hurley interests, but the record would indicate a valid and adequate warehousing arrangement giving rise to a claim for possession that certainly was not merely colorable and not frivolous or a sham or fraud. See *Bostian v. Park National Bank,* 226 F.2d 753 (CA8, 1955).

Under a "possession" test, the bankruptcy court would lack summary jurisdiction over the claims of NYTCO and/or the Bank.

### (3) TITLE

■ While possession sufficient to establish a substantially adverse claim would seem to be the proper test, the court is satisfied that even if "title" were rather the test for exercise of summary jurisdiction under Ch. X bankruptcy, the result would be the same. The Bank, as prima facie holder of non-negotiable warehouse receipts, has presented a substantial adverse claim to title that denies summary jurisdiction in this matter to the bankruptcy court. As a secured creditor under the Uniform Commercial Code, as it has been recently construed in *Matter of Samuels & Co., Inc.,* 526 F.2d 1238 (CA5, 1976), and as holder of warehouse receipts governed by Article 7 of the UCC, *Lofton v. Mooney,* 452 S.W.2d 617 (Ky.1970), the Bank arguably has status as a good faith purchaser for value. It would appear, moreover, that under § 7–504(1) of the UCC,[3] the Bank, as holder of non-negotiable warehouse receipts from Hurley acquired whatever title interest Hurley had in the property covered by the receipts. *First National Bank of Fleming v. Petzoldt,* 262 F.2d 540 (CA10, 1958); 7 G. Gilmore, *Security Interests in Personal Property* § 6.6 (1965); White and Summers, *Uniform Commercial Code* § 205, pp. 703, *et seq.* (1972).

---

3. "A transferee of a document, whether negotiable or nonnegotiable, to whom the document has been delivered but not duly negotiated, acquires the title and rights which his transfer- or had or had actual authority to convey." Ark.Stat.Ann. § 85–7–504(1); Tenn.Code Ann. § 47–7–504(1).

In R. Brancher, *Documents of Title Under the Uniform Commercial Code* § 6.1, at 83–84, (1958), it is stated:

> The delivery of documents of title to a lender as collateral security is commonly referred to as a 'pledge'. In many cases the 'pledgee' becomes the legal owner of the goods, and the term 'chattel mortgage' might be more accurate . . . .. The Code [UCC] abandons both terms for the broader term 'security interest'; Article 9 (Secured Transactions), like most of Article 2 (Sales) applies without regard to 'title' (citing §§ 9–102, 9–202, 2–401)

. . . ..
  .      .      .      .      .

> The pledgor may simply borrow money on the security of his own goods, retaining the beneficial interest for himself. If the document is duly negotiated to the lender, or if it is issued directly to the lender in the lender's name, it is traditional to say that the lender holds the legal title as security and that the pledgor retains an 'equity of redemption'. That 'equity' may be transferred, subject to the lender's security interest; the security interest may be separately transferred as part of an assignment of the debt. This pattern is typical for raw commodities stored in warehouses.

The Court concludes that under UCC § 7–504(1) and the agreement of the parties, an important and significant portion of Hurley's right, title and interest in the property passed with the transfer of the warehouse receipts to the Bank. It does not appear that the title provision of § 7–504(1) was "varied by agreement of the parties." UCC § 1–102(3). The Bank has a substantial adverse claim, therefore, to title of the property, as opposed to debtor or the other creditors.

### (4) VENUE

■ Venue of a plenary suit to adjudicate the Bank's claims could appear to lie only in this Court, by virtue of 12 U.S.C. § 94.[4]

This venue section, enacted originally as section 57 of the National Bank Act of 1864, has been criticized, see, e. g., *Staley v. Homeland, Inc.,* 368 F.Supp. 1344 (E.D.N.C. 1974), but nonetheless upheld, *Staley, supra; Northside Iron & Metal Co., Inc. v. Dobson & Johnson, Inc.,* 480 F.2d 798 (CA5, 1973); *In Re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341 (S.D.N.Y. 1974), *aff'd,* 515 F.2d 505 (CA2, 1975); see also generally the Annotation in 10 A.L. R.2d 940. The Court finds the venue section applicable here. Venue in a suit against a national bank charged with Securities Act violations was held to be governed by 12 U.S.C. § 94 rather than the broad venue provisions of Section 27 of the Securities Exchange Act.[5] *Radzanower v. Touche, Ross & Co., et al.,* 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). No waiver or consent by the Bank to be sued in the Eastern District of Arkansas is indicated. This dispute appears further to be a "transitory", rather than "local", or *in rem* in nature, and thus not within the exception to Section 94 recognized in *Casey v. Adams,* 102 U.S. 66, 26 L.Ed. 52 (1880). Although the Court is sympathetic to arguments of farmers and co-op creditors that logically all claimants against Hurley should have their priorities and rights determined in an Arkansas tribunal, the Court feels bound by the clear import of Section 94, and its mandatory nature, *Mercantile Bank at Dallas v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), and is not persuaded that the Bankruptcy Act preempts the bank

---

4. "Suits, actions, and proceedings against any association under this title [National Bank] may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

5. This act provides that "an[y] suit or action to enforce any liability or duty created [by or under the Securities Exchange Act] . . . may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business . . ..".

venue section.[6] See also *Radzanower v. Touche, Ross & Co., et al., supra.*

### (5) BANKRUPTCY JURISDICTION UNDER CHAPTER TEN AND ELEVEN

■ It is further contended that the Bankruptcy Act confers broader summary jurisdiction to a bankruptcy court in proceedings under Chapters X and XI than in straight bankruptcy proceedings. This contention is based upon the "exclusive jurisdiction" provisions, 11 U.S.C. §§ 511 (Ch. X) and 711 (Ch. XI), hereinabove. The authorities are not in accord in interpreting these sections of the Bankruptcy law.

It is suggested in *Collier on Bankruptcy* (Vol. 6, ¶ 3.05—Ch. X; Vol. 8, ¶¶ 3.02—Ch. XI) that the provisions just mentioned make "title" or "ownership" the test for summary jurisdiction in Chs. X and XI proceedings. Even so, it is said by *Collier* that where a third party is in possession and asserts a substantial adverse claim to title, the bankruptcy courts lack summary jurisdiction. See also, *In Re American National Trust,* 426 F.2d 1059 (CA7, 1970) (Ch. X proceeding).

The matter is somewhat differently presented in 9 *Remington on Bankruptcy,* § 3574 (5th ed. 1953). There reliance is placed upon the provisions in 11 U.S.C. §§ 600 (Ch. X) and 752 (Ch. XI) for the proposition that the rights, duties and liabilities of all persons with respect to the property of the debtor shall be the same as in "straight" bankruptcy, and that the bankruptcy court has no greater summary jurisdiction in Chs. X and XI proceedings than in "straight" bankruptcy.

Case law would seem to support the latter position. See *Wikle v. Country Life Ins.*

*Co.,* 423 F.2d 151 (CA9, 1970) (and cases cited therein); *In re Barasch,* 439 F.2d 1393 (CA9, 1971); *Slenderella Systems of Berkeley v. Pacific Tel & Tel. Co.,* 286 F.2d 488 (CA2, 1961); *In re H. L. Gentry Constr. Co.,* 200 F.Supp. 546 (E.D.Mich.1961), *aff'd,* 314 F.2d 945 (CA6, 1963).

This Court, moreover, has the guidance of the recent decision of the Sixth Circuit in *Bayview Est. Inc. v. Bayview Est. Mobile Home Ass'n,* 508 F.2d 405, 407 (CA6, 1974), in the context of the "exclusive jurisdiction" section of Ch. XI (11 U.S.C. § 711) that "the bankruptcy court's exercise of summary jurisdiction depends upon a finding that it has possession, either actual or constructive, of the property in question. . . . 'And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy.'" (citations omitted). Cf. *In re Cuyahoga Finance Co.,* 136 F.2d 18 (CA6, 1943); *In re Mt. Forest Fur Farms of America, Inc.,* 122 F.2d 232 (CA6, 1941), *cert. den.,* 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561, *reh. den.,* 315 U.S. 826, 62 S.Ct. 622, 86 L.Ed. 1222.[7]

Defendants' reliance upon *First Nat. Bank v. Lake,* 199 F.2d 524 (CA4, 1952), *cert. den.,* 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705, seems misplaced, for the court there recognized,

> The question involved in the case is not whether the reorganization court in a Chapter X proceeding has summary jurisdiction of a suit to recover property claimed adversely by the holder thereof; but whether a secured creditor may, through the device of asking a declaratory judgment, take away the jurisdiction of the reorganization court over the prop-

---

**6.** Earlier in the same term as *Radzanower v. Touche, Ross & Co., et al., supra,* the Supreme Court reversed decisions of Utah state courts that the venue provision of the National Bank Act is permissive and not exclusive, *National Bank of North America v. Associates of Obstetrics and Female Surgery, Inc.,* 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976).

**7.** See *First National Bank v. Chicago Title & T. Co.,* 198 U.S. 280, 25 S.Ct. 693, 49 L.Ed. 1051

(1905), wherein it was held that a warehouseman and holders of warehouse receipts who had possession of the property prior to adjudication of the "owner" as a bankrupt held the property adversely to the bankruptcy trustee and deprived the bankruptcy court of summary jurisdiction over their claims. Cf. *Whitney v. Wenman,* 198 U.S. 539, 25 S.Ct. 778, 49 L.Ed. 1157 (1905).

erty of the debtor pledged as security and may likewise take away from that court the jurisdiction to determine the amount of secured and unsecured debts of the creditor entitled to share in any plan of reorganization that the court may approve. We think it clear that this question should be answered in the negative, 199 F.2d at 527.

The Court in *Lake, supra,* distinguished the situation in an earlier decision of that court in *Warder v. Brady,* 115 F.2d 89 (CA4, 1940), wherein the Court had held that a bankruptcy court lacked summary jurisdiction where a third party was in possession claiming title. *First Nat. Bank v. Lake, supra,* at 529; see also, however, the dissenting opinion of Judge Soper in *Lake, supra,* at 533 *et seq.* Compare this dissent with the earlier decision in *Atlanta Flooring & Insulation Co. v. Russell,* 146 F.2d 884, 885–886 (CA5, 1945), *cert. den.,* 325 U.S. 862, 65 S.Ct. 1202, 89 L.Ed. 1983, wherein it was stated:

> Summary jurisdiction may not be exercised to determine adverse claims to property not in the actual or constructive possession of the bankrupt at the time the petition in bankruptcy was filed, whether the adverse claimant asserts the absolute title thereto or merely a lien thereon.

See also *In re American National Trust, supra.*

### (6) THE BANK AS DEFENDANT

There have been in this very complex dispute several hearings before this Court and many others before the Bankruptcy Court in Arkansas. The parties have undertaken extensive discovery. Many issues have been raised and argued that involve substantial difficulty and some differing opinions of courts and authorities.

A real and substantial dispute exists involving substantial claims with regard to NYTCO Services, Inc. and its posture regarding commodities in its custody. One of the principal adverse claimants to the commodities or the proceeds thereof is certainly the First National Bank. It was properly sued, at least as to venue, in this Court.

Others who claim a conflicting or prior interest to that of the Bank in question have been noticed and effectually brought before this Court. Most, if not all, of them reside in Arkansas. An important decision concerning jurisdiction or apparent jurisdiction needs to be made.

### (7) CONCLUSION

The Court reaches this decision with reluctance, because the numerous other parties, all Arkansas residents or entities, desire the matter to be resolved in conjunction with the bankruptcy proceedings in Arkansas, and there are reasons to believe that route could be the more economical and prudent route for all save NYTCO and the Bank. At the same time, the Court cannot disregard the rights of the latter two parties and the requirements of a correct forum to consider and determine these rights.

All suggestions and contentions in the record that this Court's jurisdiction over this cause is preempted by bankruptcy proceedings involving Hurley entities are overruled. Neither NYTCO nor the Bank may be compelled to submit their substantial claims and rights of possession and title to the Bankruptcy Court.

Any prior stay or Order of this Court which is inconsistent with this Opinion is intended to be set aside and vacated. Inconsistent or contrary Orders of the Bankruptcy Judge in the Eastern District of Arkansas are to be set aside and disregarded insofar as this Court has determined jurisdiction to adjudicate the issues involved in this proceeding.